EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Juan Vargas Serrano<br><br>Recurrido<br><br>v.<br><br>Institución Correccional<br><br>Peticionario | Certiorari<br><br>2017 TSPR 93<br><br>198 DPR ____ |

Número del Caso: CC-2015-102

Fecha: 2 de junio de 2017

Tribunal de Apelaciones:
        Región Judicial de Arecibo

Oficina del Procurador General:


        Lcda. Karla Pacheco Álvarez
        Subprocuradora General

        Lcda. Sylvia Roger Stefani
        Procuradora General Auxiliar


Abogado de la parte recurrida:

        Por derecho propio


Materia: Jurisdicción de la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación para conceder rebajas al término de la sentencia de los miembros de la población correccional por buena conducta y asiduidad.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Juan Vargas Serrano

    Recurrido

       v.

Institución Correccional

    Peticionario

*Certiorari*

CC-2015-0102

**EL JUEZ ASOCIADO SEÑOR RIVERA GARCÍA emitió la opinión del Tribunal.**

En San Juan, Puerto Rico, 2 de junio de 2017.

Este caso nos brinda la oportunidad de determinar cuál es la entidad adscrita al Departamento de Corrección y Rehabilitación (Departamento de Corrección) que tiene autoridad para conceder rebajas al término de la sentencia de los miembros de la población correccional por buena conducta y asiduidad. En particular, debemos resolver si la División de Remedios Administrativos (División de Remedios o División) tiene jurisdicción para atender estas solicitudes de bonificaciones o si, por el contrario, esto le compete al Comité de Clasificación y Tratamiento (Comité de Clasificación). Ello requiere que interpretemos

varias disposiciones reglamentarias aprobadas por el Departamento de Corrección.

Luego de ponderar el derecho aplicable a la controversia, resolvemos que la División de Remedios es el organismo con jurisdicción para atender los reclamos sobre bonificaciones por buena conducta y asiduidad. Aclaramos que de ninguna manera estamos pasando juicio sobre la certeza de la determinación de la División de Remedios de denegar la bonificación solicitada. Nuestro análisis se limita a resolver el planteamiento jurisdiccional que se presentó ante esta Curia.

A continuación exponemos los antecedentes fácticos que dieron origen a la controversia del presente caso.

**I**

El 3 de marzo de 2014, el Sr. Juan Vargas Serrano (señor Vargas Serrano o recurrido), miembro de la Institución Correccional Ponce Principal, presentó ante la División de Remedios una petición de rebaja al término de su sentencia.[1] En ésta alegó ser acreedor de abonos por buena conducta y asiduidad.[2] El 13 de marzo de 2014, la Sra. Annette Sáez Vargas, **técnica de récord penal adscrita a la División de Remedios de la institución,** denegó la *Solicitud de Remedio* por entender que la condena de reclusión de noventa y nueve años del señor Vargas Serrano estaba

---

[1] Véase Apéndice de la Petición de *Certiorari, Solicitud de Remedio Administrativo*, págs. 34-35.

[2] Íd.

excluida de dichas bonificaciones.[3] De esta determinación el recurrido presentó una solicitud de reconsideración, la cual fue denegada por la División de Remedios mediante resolución el 27 de agosto de 2014.[4]

Inconforme, el 17 de septiembre de 2014 el señor Vargas Serrano acudió al Tribunal de Apelaciones mediante un recurso de revisión judicial.[5] Allí planteó, en síntesis, dos cosas: (1) que el Departamento de Corrección le aplicó una ley *ex post facto* al excluirlo de los abonos por buena conducta; y (2) que el foro administrativo había errado al no acreditarle las bonificaciones que había solicitado al cómputo máximo y mínimo de su sentencia.[6] En su lugar, el foro apelativo determinó que la División de Remedios carecía de jurisdicción para atender los reclamos de bonificaciones por buena conducta y asiduidad. Razonó que como el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional, Reglamento Núm. 8522 de 26 de septiembre de 2014, establece que la División de Remedios no tiene jurisdicción para atender situaciones en que "no se haya agotado el trámite administrativo concedido por otros

---

[3] Véase íd., *Respuesta del Área Concernida/Superintendente*, pág. 38. Debido a que el señor Vargas Serrano fue sentenciado en el 1990, la técnica de récord concluyó que éste no cualificaba para los beneficios de bonificación por buena conducta.

[4] Apéndice de la Petición de *Certiorari, Solicitud de Reconsideración*, pág. 40. Véase, además, íd., *Resolución*, págs. 41-42.

[5] Íd., *Revisión Judicial*, pág. 22.

[6] Íd., pág. 30.

reglamentos", esta última carecía de jurisdicción para atender las solicitudes de bonificaciones y las mismas debían "ser atendid[as] y resuelt[as]" por el Comité de Clasificación.[7] Para sostener su determinación, expuso que el artículo XV del Reglamento de Bonificación establece las responsabilidades del Comité de Clasificación, entre las cuales está la concesión de abonos al término de la sentencia. Como consecuencia, dejó sin efecto la determinación de la División de Remedios.[8] Oportunamente, el Departamento de Corrección solicitó reconsideración de este dictamen, la cual fue declarada "[n]o ha lugar" el 18 de diciembre de 2014, mediante *Resolución* notificada el 30 de diciembre de 2014.[9]

---

[7] Íd., *Sentencia*, págs. 6-8. Cabe aclarar que al momento de presentarse la *Solicitud de Remedio* por el recurrido y emitirse la determinación de la División, estaba vigente el Reglamento Núm. 8145 de 23 de enero de 2012. Sin embargo, la citada Regla VI(2)(a) dispone de igual manera en ambos reglamentos.

[8] Apéndice de la Petición de *Certiorari*, *Sentencia*, pág. 8. La Jueza Aida Nieves Figueroa **disintió** por entender que el recurso de revisión judicial se presentó fuera de término.

No obstante, surge de la *Respuesta al miembro de la población correccional* que en la primera ocasión la División de Remedios solo le notificó al señor Vargas Serrano el término para presentar reconsideración y **no el término para acudir en revisión judicial**. Íd., pág. 39. Por consiguiente, la primera notificación debe considerarse inadecuada para propósitos de computar los referidos términos. Véanse: Colón Torres v. A.A.A., 143 DPR 119, 124 (1997); Maldonado v. Junta Planificación, 171 DPR 46, 57-58 (2007); IM Winner, Inc. v. Junta de Subastas del Gobierno Municipal de Guayanilla, 151 DPR 30, 35-36 (2000); véase, además, Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 LPRA sec. 2164. Fue en la resolución del 27 de agosto de 2014 que la Institución Correccional le notificó al recurrido de su derecho a solicitar revisión judicial y el término correspondiente. Habiendo acudido el recurrido en revisión judicial el 17 de septiembre de 2014, el recurso **se presentó oportunamente**.

[9] Apéndice de la Petición de *Certiorari*, *Notificación de Resolución en Reconsideración*, págs. 18-20.

No conteste con dicha determinación, el Departamento de Corrección -por conducto de la Oficina de la Procuradora General- acudió ante esta Curia mediante Petición de *Certiorari* y solicitó que revocáramos la determinación del Tribunal de Apelaciones. En esencia, arguyó que los reclamos de bonificaciones por buena conducta y asiduidad le corresponde atenderlos a la División de Remedios y que no existe disposición reglamentaria que requiera agotar un trámite administrativo ante el Comité de Clasificación.

Luego de que se nos presentara una *Moción de Reconsideración*, acordamos expedir el recurso. Con este cuadro fáctico y la comparecencia del Departamento de Corrección, en primer lugar, procedemos a exteriorizar de manera sucinta las normas de revisión judicial y los principios de hermenéutica legal que deben guiar nuestro análisis.

## II

El alcance de nuestro papel revisor, como regla general, es uno limitado en el derecho administrativo.[10] Reiteradamente hemos sostenido que la revisión judicial que se haga de las interpretaciones que realiza una agencia sobre los reglamentos y las leyes que administran merecen gran peso, deferencia y respeto por parte de los tribunales.[11] Esta deferencia tiene origen en el axioma que

---

[10] D. Fernández Quiñones, <u>Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme</u>, 3ra ed., Ed. Forum, 2013, pág. 670.

[11] <u>Ayala Hernández v. Consejo de Titulares</u>, 190 DPR 547, 569 (2014); <u>Acarón Montalvo v. D.R.N.A.</u>, 186 DPR 564, 585 (2012); <u>López Leyro v.</u>

nos impide soslayar que son las agencias las que poseen la experiencia y el conocimiento especializado acerca de los asuntos que se le han encomendado.[12] Por ello, hemos resuelto que al revisar las decisiones de las agencias el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque ésta no tiene que ser la única o la más razonable.[13] Como agencia administrativa sujeta a los postulados de la Ley de Procedimiento Administrativo Uniforme, *supra*, en el pasado hemos indicado que en nuestra encomienda no debemos descartar libremente las interpretaciones o conclusiones de derecho del Departamento de Corrección, sino que debemos darle deferencia en la medida en que sean razonables.[14]

No obstante, en el descargo de nuestra función revisora debemos distinguir entre "cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias de la discreción o pericia

ELA, 173 DPR 15, 26 (2008); Cruz v. Administración de Corrección, 164 DPR 341, 357-358 (2005).

[12] González Segarra *et al.* v. CFSE, 188 DPR 252 (2013); Hernández, Álvarez v. Centro Unido, 168 DPR 592, 614 (2006). Véanse, además: Cruz v. Administración de Corrección, 164 DPR 341, 357 (2005); Otero v. Toyota, 163 DPR 716, 727 (2005); Rivera Concepción v. ARPe, 152 DPR 116, 124 (2000); Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., 144 DPR 425, 436 (1997).

[13] Hernández, Álvarez v. Centro Unido, *supra*, pág. 614; Puerto Rico Telephone Co. v. Junta Reglamentadora de Telecomunicaciones de Puerto Rico, 151 DPR 269, 283 (2000); De Jesús v. Depto. Servicios Sociales, 123 DPR 407, 418 (1989).

[14] Ibarra González v. Dpto. de Corrección, 194 DPR 29, 30, 33 (2015) (Opinión de Conformidad del Juez Asociado Señor Rivera García); López Borges v. Adm. de Corrección, 185 DPR 603, 627 (2012) (Opinión de Conformidad de la Juez Asociada señora Rodríguez Rodríguez). Véanse, además: González Segarra *et al.* v. CFSE, 188 DPR 252 (2013); Rivera Concepción v. ARPe, *supra*, pág. 123; López Leyro v. ELA, *supra*, pág. 26; Cruz v. Administración de Corrección, *supra*, pág. 357.

administrativa".[15] En <u>López Leyro v. ELA</u>, 173 DPR 15 (2008),
hicimos ciertas expresiones sumamente pertinentes en la
resolución de la controversia de autos. Así, pues,
expresamos lo siguiente:

> Cuando se impugna la intervención de un
> organismo administrativo por supuestamente carecer
> de autoridad en determinado caso, sin duda **se
> plantea una cuestión de derecho.** Una alegación en
> tal dirección reta las bases jurisdiccionales del
> organismo: bien por exceder límites estatutarios,
> bien por ignorar excepciones a la intervención
> establecidas por el propio reglamento. En tales
> casos, los tribunales pueden revisar en todos sus
> extremos las conclusiones legales que justifican
> tal actuación.
>
> **Ahora bien, las agencias cuentan con un
> peritaje vasto en relación con la materia objeto de
> su gestión rutinaria. "La interpretación que del
> estatuto ést[a]s hagan y los fundamentos que aducen
> en apoyo de la misma, resultan de gran ayuda para
> los tribunales de justicia"** al pasar juicio sobre
> la corrección de las decisiones administrativas.[16]

Por otro lado, es imprescindible que tengamos presente
que cuando la ley es clara su letra es la mejor expresión de
lo que se quiso lograr con su aprobación.[17] Ahora bien, hay
ocasiones en que el texto de un estatuto puede resultar
obscuro o generar lagunas sobre algún punto en particular.
Para cumplir con nuestro deber, es indispensable que
examinemos los estatutos que se refieren a un mismo asunto,
de modo que sean interpretados los unos con los otros y un

---

[15] <u>Asoc. FCIAS v. Caribe Specialty II</u>, 179 DPR 923, 941 (2010).

[16] <u>López Leyro v. ELA</u>, *supra*, págs. 25-26. (Énfasis suplido y referencias omitidas).

[17] <u>Asoc. FCIAS v. Caribe Specialty II</u>, *supra*, pág. 938; <u>Matos v. Junta Examinadora</u>, 165 DPR 741, 749 (2005).

precepto pueda arrojar claridad sobre lo dudoso del otro.[18] Al así proceder cumplimos con el mandato que nos prohíbe interpretar las disposiciones de las leyes de manera aislada.[19] En el fiel desempeño de nuestro rol debemos interpretarlas conjuntamente, no de manera fraccionada, tomando en consideración íntegramente todo su contexto.[20] Esta práctica la hemos extendido a la interpretación de los reglamentos.[21]

Hoy nuestro dictamen debe ser cónsono con estos principios de hermenéutica. Con ello en mente, a continuación exponemos el marco legal aplicable a la controversia que nos ocupa.

### III

### A

La Sección 19 del Artículo VI de la Constitución de Puerto Rico establece como política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes

---

[18] Pueblo v. Pizarro Solís, 129 DPR 911, 918 (1992).

[19] Bomberos Unidos v. Cuerpo Bomberos, 180 DPR 723, 750 (2011). Véanse, además: Depto. Educ. v. Díaz Maldonado, 183 DPR 315, 332 (2011); Asoc. FCIAS v. Caribe Speciality II, supra, págs. 939-940; Torres Santiago v. Mun. De Coamo, 170 DPR 541, 559-560 (2007); Romero Barceló v. ELA, 169 DPR 460, 479 (2006); Mun. de San Juan v. Banco Gub. de Fomento, 140 DPR 873, 884 (1996).

[20] Bomberos Unidos v. Cuerpo Bomberos, supra; Asoc. FCIAS v. Caribe Speciality II, supra; Torres Santiago v. Mun. de Coamo, supra, pág. 560; Romero Barceló v. ELA, supra.

[21] López Leyro v. ELA, supra, pág. 24.

para hacer posible su rehabilitación moral y social".[22] En reconocimiento a este mandato constitucional, se aprobó la Ley Orgánica de la Administración de Corrección, Ley Núm. 116 de 22 de julio de 1974 (Ley de la Administración de Corrección), 4 LPRA secs. 1101 *et seq.*, que creó la Administración de Corrección otorgándole poderes y la flexibilidad necesaria para facilitar la rehabilitación y reintegración de la persona confinada como ciudadano productivo y respetuoso de la ley.[23]

Más adelante, con la promulgación del Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011, Plan de Reorganización Núm. 2-2011 (Plan de Reorganización), 3 LPRA Ap. XVIII, se derogó expresamente la Ley de la Administración de Corrección, *supra*, pero se mantuvo el objetivo principal de establecer procesos de rehabilitación moral y social de los confinados para fomentar su reincorporación a la sociedad.[24] Este plan, además, tuvo el fin de reorganizar el Departamento de Corrección, reduciendo su burocracia, a la vez que delegaba "aquellos poderes necesarios para **facilitar la toma de decisiones**".[25]

---

[22] Art. VI, Sec. 19., Const. PR, LPRA, Tomo 1, ed. 2016, pág. 455.

[23] Véase Exposición de Motivos de la Ley de la Administración de Corrección, *supra*.

[24] Art. 2 del Plan de Reorganización, *supra*; Ibarra González v. Dpto. de Corrección, *supra*, pág. 42 (Opinión disidente del Juez Asociado Señor Estrella Martínez).

[25] Art. 2 del Plan de Reorganización, *supra*. (Énfasis suplido).

Con la aprobación del Plan de Reorganización se le otorgó al Secretario del Departamento de Corrección el poder de

> [a]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios.[26]

De igual modo, se le concedió la facultad de "[a]signar, delegar y conferir responsabilidades y facultades al personal del Departamento a base de criterios que permitan el uso más eficaz de los recursos, excepto las facultades de nombramiento, adoptar reglamentos y formular la política normativa del Departamento".[27]

En vista de estas facultades y poderes delegados al Secretario del Departamento de Corrección, se aprobó el Manual para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Correccionales, Reglamento Núm. 7334 de 10 de abril de 2007 (Manual del Comité de Clasificación). Mediante este reglamento se creó el Comité de Clasificación para que, a nivel de la institución correccional, tomara las decisiones fundamentales sobre el tratamiento del confinado.[28] Además,

---

[26] Íd., art. 7(aa).

[27] Íd., inciso (nn).

[28] Véase López Leyro v. ELA, *supra*, págs. 29-30. Dicho Comité "está integrado por el técnico de servicios sociopenales a cargo del caso, por el supervisor de la unidad sociopenal o encargado y un oficial correccional como representante de la seguridad". Reglamento de Bonificación por Buena Conducta, Trabajo, Estudio y Servicios

con la aprobación de este reglamento se definieron, en gran medida, los poderes y responsabilidades de dicho organismo. Se dispuso, particularmente, que el Comité de Clasificación sería el organismo administrativo responsable de evaluar la situación del miembro de la institución correccional, el progreso alcanzado y determinar el plan de acción a tomar en cada caso.[29] A tales fines, se le concedió la facultad de **evaluar y estructurar el plan de tratamiento institucional** a los confinados.[30] Es decir, entre otras cosas, al Comité de Clasificación se le confirió la función "**de evaluar las necesidades, capacidades, intereses, limitaciones y funcionamiento social y estructurarle un plan de tratamiento**" a los miembros de la población correccional.[31]

Por su parte, el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8145 de 23 de enero de 2012 (Reglamento para Remedios Administrativos), creó la División de Remedios con el

---

Excepcionalmente Meritorios (aprobado el 10 de diciembre de 2013) (Reglamento de Bonificación), art. IV(7); Manual para la clasificación de confinados, Reglamento Núm. 8281 de 30 de noviembre de 2012.

En el momento en que la División de Remedios Administrativos emitió su *Resolución* de 27 de agosto de 2014 estaba vigente el Reglamento Núm. 7334. No obstante, aproximadamente dos meses más tarde, éste fue derogado por el Manual para Crear y Definir Funciones del Comité de Clasificación y Tratamiento en las Instituciones Correccionales, Reglamento Núm. 8523 de 26 de septiembre de 2014, al entrar en vigencia.

[29] Manual del Comité de Clasificación, *supra*, págs. 1-2 (Introducción).

[30] Véase íd., Regla 4; Reglamento de Bonificación, *supra*, art. IV(7).

[31] Regla 1 y 4(1) del Manual del Comité de Clasificación, *supra*. (Énfasis suplido). Véanse, además: Reglamento de Bonificación, *supra*, art. IV(7); Manual para la clasificación de confinados, *supra*, pág. 19.

objetivo de que los confinados pudieran presentar una solicitud de remedio en su institución correccional de origen y, de este modo, "facilitar el proceso de rehabilitación del confinado".[32] Para ello, se le concedió la facultad de recopilar información relacionada a los reclamos de los confinados que le permitiera evaluar los programas disponibles y "velar por el cumplimiento de los deberes y obligaciones creadas por leyes y reglamentos que aplican al Departamento de Corrección y Rehabilitación".[33]

El Reglamento para Remedios Administrativos, *supra*, rige y establece el ámbito de jurisdicción de la División de Remedios. En particular, la Regla VI(1) del reglamento establece que

> **[l]a División tendrá jurisdicción para atender toda Solicitud de Remedios** radicada por los miembros de la población correccional en cualquier institución o facilidad correccional donde se encuentre extinguiendo sentencia y que esté, **relacionada directa o indirectamente** con:
>
> > a. Actos o incidentes que afecten personalmente al miembro de la población correccional en su bienestar físico, mental, en su seguridad personal o en **su plan institucional**.

---

[32] Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8145 de 23 de enero de 2012 (Reglamento para Remedios Administrativos), pág. 3 (Introducción). Este reglamento era el vigente a la fecha en que se emitieron las determinaciones por la División de Remedios.

Nótese que el Reglamento Núm. 8145 fue derogado posteriormente por el Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8522 de 26 de septiembre de 2014, que a su vez fue derogado por el hoy Reglamento para Atender las Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional, Reglamento Núm. 8583 de 4 de mayo de 2015.

[33] Reglamento para Remedios Administrativos, *supra*, págs. 1 y 3.

b. Cualquier incidente o reclamación comprendida bajo las disposiciones de este Reglamento.

c. Cuando el superintendente impone la suspensión de privilegios sin celebración de vista alguna, conforme a la reglamentación vigente sobre la "Suspensión de Privilegios por Razones de Seguridad".[34]

De la citada regla se desprende que el Reglamento para Remedios Administrativos le concedió expresamente jurisdicción a la División de Remedios para atender solicitudes presentadas por los miembros de la población correccional que tuvieran cualquier relación con incidentes que afectaran su plan institucional, ya fuera directa o indirectamente. En otras palabras, se dispuso que la División tiene jurisdicción para atender **toda solicitud de remedios** relacionada a incidentes que afecten "la asignación de confinados a programas y servicios conforme a las necesidades, capacidades, intereses, limitaciones y funcionamiento institucional".[35]

Asimismo, la Regla VI(2) del Reglamento para Remedios Administrativos instituye las instancias en que la División de Remedios está privada de jurisdicción, a saber:

a. **Cuando no haya agotado el trámite administrativo concedido por otros reglamentos,** excepto que la solicitud se refiera al incumplimiento del trámite correspondiente ante aquel organismo.

b. Solicitudes de Remedios suscritas por un miembro de la población correccional en representación de otros miembros de la población correccional en la misma solicitud.

---

[34] Íd., Regla VI(1). (Énfasis suplido).

[35] Véase Reglamento de Bonificación, *supra*, art. IV(11).

c. Cuando se trate de impugnar una orden o decisión de cualquier organismo administrativo del Estado Libre Asociado de Puerto Rico o de un Tribunal de Justicia.

d. Controversias relacionadas con las decisiones emitidas por la Junta de Libertad Bajo Palabra, excepto que la Solicitud de Remedios se refiera al incumplimiento del área concernida de rendir los informes o llevar a cabo unas acciones o incurrir en omisiones de obligaciones impuestas por el ordenamiento jurídico vigente.

e. Cuando se impugne una decisión emitida por algún comité conforme a los reglamentos aprobados, según dispone la Ley de Procedimiento Administrativo Uniforme, excepto que la Solicitud de Remedio se refiera al incumplimiento del trámite correspondiente impuesto por un tribunal.

f. Cuando se trate de reclamaciones por accidentes del trabajo o de vehículos de motor, las cuales serán manejadas según la Ley de la Corporación del Fondo del Seguro del Estado y la Ley de Administración de Compensaciones por Accidentes de Automóviles, excepto que la solicitud se refiera al incumplimiento por parte del Departamento de Corrección y Rehabilitación de llevar a los miembros de la población correccional a recibir los servicios iniciales o de seguimiento,

g. Cualquier otra situación que no cumpla con las disposiciones del presente Reglamento para la radicación de Solicitudes de Remedios.[36]

Fue precisamente el inciso 2(a) de la Regla VI del Reglamento para Remedios Administrativos, *supra*, que el foro intermedio utilizó para sostener que la División no tenía jurisdicción para atender la solicitud de bonificaciones presentada por el recurrido. Empero, **no** surge expresamente de la disposición reglamentaria antes citada que la División de Remedios esté privada de jurisdicción para atender

---

[36] Reglamento para Remedios Administrativos, *supra*, art. VI(2). (Énfasis suplido).

solicitudes de bonificaciones por buena conducta y asiduidad. Tampoco surge referencia a un trámite específico que deba agotarse ante el Comité de Clasificación.

Por lo tanto, nuestro análisis no puede detenerse en una lectura ligera de las disposiciones antes mencionadas. Debemos adentrarnos en la normativa que rige específicamente la concesión de bonificaciones para poder observar si las mismas arrojan luz sobre la controversia que hoy atendemos.

**B**

Como señalamos, inicialmente los parámetros para la concesión de bonificaciones eran reglamentados por la Administración de Corrección, según le había sido delegado por la Ley de la Administración de Corrección, *supra*.[37] En la actualidad el Plan de Reorganización dispone la rebaja de la sentencia por buena conducta y asiduidad observada por los miembros de la población correccional durante su reclusión, así como las bonificaciones por estudio, trabajo y servicios excepcionalmente meritorios.[38]

En el caso específico de las bonificaciones, el Manual del Comité de Clasificación le concedió al Comité la facultad y el deber de "[e]valuar los casos sometidos a su consideración conforme se establece en el Reglamento de

---

[37] El artículo 20 de la Ley de la Administración de Corrección, *supra*, autorizaba "al Administrador a adoptar reglamentos referentes a la concesión, cancelación y restitución de abonos por buena conducta, trabajo y estudios o servicio excepcionalmente meritorio o de suma importancia". 4 LPRA sec. 1165 (derogada).

[38] Arts. 11-12 del Plan de Reorganización, *supra*. Inclusive, con la aprobación del Plan de Reorganización, los poderes delegados a la Administración de Corrección fueron transferidos al Departamento de Corrección. Véase íd., arts. 14 y 88.

Bonificación por Buena Conducta y Asiduidad".[39] De hecho, surge del referido Manual -lo que aparenta ser una aclaración- que la facultad otorgada se refiere a: (1) **"aprobar la bonificación adicional** que se haya ganado el confinado"; **y** (2) "solicitar al Secretario la autorización para **[b]onificación [a]dicional por servicios excepcionalmente meritorios** o deberes de suma importancia con relación a las funciones de la institución".[40]

A pesar de lo anterior, al establecer las funciones y deberes otorgados al Comité de Clasificación, la Regla 4 del Manual del Comité de Clasificación, *supra*, dispuso que éste atendería "[t]oda situación de un confinado sentenciado relacionada a su plan de tratamiento". Ciertamente, si vemos esta disposición reglamentaria de manera aislada concluiríamos que la autoridad para conceder bonificaciones por buena conducta es del Comité de Clasificación. Ello porque, como veremos, para que el miembro de la institución correccional demuestre buena conducta debe haber cumplido con el plan institucional trazado. Pese a lo anterior, un análisis integral de las disposiciones reglamentarias aplicables nos lleva a una conclusión distinta.

En vista de ello, y como parte de nuestra obligación de emitir dictámenes completos y bien fundamentados, debemos tomar el camino que manda el Manual del Comité de Clasificación, *supra*. En ese sentido, con el fin de

---

[39] Regla 4(A)(4) del Manual del Comité de Clasificación, *supra*.

[40] Íd. (Énfasis suplido).

determinar cómo internamente el Departamento de Corrección ha distribuido las funciones que le fueron delegadas, debemos dirigirnos al precitado Reglamento de Bonificación por Buena Conducta, Trabajo, Estudio y Servicios Excepcionalmente Meritorios del 10 de diciembre de 2013 (Reglamento de Bonificación), vigente al momento de atenderse la solicitud del señor Vargas Serrano. Ello nos debe permitir comprobar si esas fueron las únicas facultades y deberes que se encomendaron al Comité de Clasificación o si alguna otra disposición le confiere autoridad sobre la asignación de bonificaciones por buena conducta y asiduidad.

Nótese que, desde su título, el Reglamento de Bonificación, *supra*, hace mención a distintas razones por las cuales se puede otorgar rebajas al término de la sentencia de un confinado: por buena conducta, trabajo, estudio y servicios. Por ello, como parte de nuestro análisis, es preciso que examinemos cautelosamente si estas bonificaciones son tratadas de igual manera en el mencionado Reglamento de Bonificación. Veamos.

El Reglamento de Bonificación establece que **para que se considere que un confinado satisfizo el requisito de buena conducta, éste debe haber "cumpl[ido] con el plan institucional trazado**, así como los reglamentos y leyes que establecen una sana convivencia dentro de la facilidad correccional o bajo supervisión del Departamento de Corrección y Rehabilitación".[41] Siendo así, podemos afirmar

---

[41] Reglamento de Bonificación, *supra,* art. IV(5).

que la bonificación por buena conducta consiste en la rebaja del término de la sentencia que se concede al miembro de la población correccional si cumple con los programas y servicios que se le hayan estructurado y con las normas de sana convivencia en la institución correccional.[42]

La bonificación por buena conducta está regulada principalmente por los artículos V y VI del Reglamento de Bonificación, *supra*. El artículo V rige la forma de computar esta bonificación e instituye que **se computará desde la admisión** del confinado a la institución correccional.[43] Luego de una lectura cuidadosa no vemos en este artículo señal alguna que sugiera que las bonificaciones por buena conducta son computadas y concedidas por el Comité de Clasificación. Por el contrario, surge inmediatamente después del artículo V que las rebajas por buena conducta **son de encargo del técnico de récords** y se hacen ofreciendo el beneficio máximo de la bonificación.[44]

Ciertamente el Reglamento de Bonificación, *supra*, contiene varios artículos que hacen referencia al Comité de

---

[42] El Reglamento de Bonificación definió **bonificación por buena conducta** como "la rebaja del término de la sentencia de un miembro de la población correccional conforme el Plan de Reorganización Núm. 2-2011". Art. IV(4) del Reglamento de Bonificación, *supra*. Para la definición de *plan institucional,* véase, íd., art. IV(11).

[43] Íd., art. V.

[44] Véase íd., art. VI. La única definición que encontramos sobre el técnico de récords está contenida en el Manual para la clasificación de confinados, *supra*: "Empleado correccional responsable de la preparación y mantenimiento del expediente criminal de cada confinado. También es **responsable del cómputo matemático de las sentencias de cada confinado** dictadas por los tribunales, a tenor con las leyes vigentes". (Énfasis suplido). Íd., pág. 15.

Clasificación. En el caso de los abonos a la sentencia, por ejemplo, podemos notar que el Secretario del Departamento de Corrección le delegó al Comité la facultad de: (1) conceder los abonos adicionales;[45] (2) evaluar periódicamente el caso del miembro de la población correccional para conceder bonificación por estudio, trabajo y servicio;[46] (3) evaluar las necesidades, capacidades, intereses, limitaciones y funcionamiento social del confinado;[47] (4) oficializar la asignación de trabajo a los confinados sentenciados para que se pueda conceder la bonificación adicional;[48] (5) en el caso de bonificación por servicios excepcionalmente meritorios, recibir el informe del superintendente de la institución o director del área en la que está prestando servicios el confinado, el cual evalúa para someter recomendaciones al Secretario del Departamento de Corrección;[49] (6) someter a la División de Documentos y Récords Penales los resultados de la bonificación adicional que el Comité concede para que procedan con los ajustes pertinentes;[50] (7) **rebajar y cancelar** la bonificación porque el confinado incurra en mala conducta;[51] y (8) recomendar al Secretario la restitución

---

[45] Íd., art. IV(2).

[46] Íd., inciso 6.

[47] Íd., inciso 7.

[48] Íd., art. IX(10).

[49] Íd., art. XI.

[50] Íd., art. XVI.

[51] Íd., art. XVII(2).

parcial o total de todos los abonos que por mala conducta el confinado hubiera perdido.[52] Asimismo, el artículo IV del Reglamento de Bonificación, *supra*, define la **bonificación adicional como aquella otorgada por el Comité de Clasificación por <u>trabajo y estudios</u>** llevados a cabo por el miembro de la población correccional.[53] De hecho, así también se hace constar en el artículo XV al disponerse la facultad del Comité de Clasificación de conceder la bonificación adicional.[54]

Ninguna de las disposiciones aludidas le concede expresamente alguna facultad al Comité de Clasificación para conceder los abonos por buena conducta y asiduidad, ni se impone la obligación de agotar algún trámite ante el referido organismo.[55] En cambio, lo que se establece es que esta bonificación sería "computada **únicamente por el técnico de récords**".[56] Esta delegación se reitera cuando el reglamento define el método para hacer las rebajas por buena

---

[52] Íd., inciso 3.

[53] Íd., art. IV(2). La bonificación adicional, la cual reiteradamente se establece que se refiere los abonos por trabajo, estudio y servicios, está regulada principalmente por los artículos VIII y IX del Reglamento de Bonificación, *supra*.

[54] Véase íd., art. XV.

[55] Para conocer otros artículos del Reglamento de Bonificación, *supra*, que sólo conceden trámites ante el Comité de Clasificación por bonificación adicional o servicios excepcionalmente meritorios, véanse, arts. XIII y XV.

[56] Íd., art. IV(4). (Énfasis suplido).

conducta. Al así hacerlo enfatiza que "[e]sta función **será responsabilidad del técnico de récords**".[57]

### IV

El Departamento de Corrección sostiene que no existe trámite administrativo que exija otro reglamento y que deba ser agotado. Arguye que las bonificaciones por buena conducta y asiduidad se conocen como "automáticas" y son computadas por el técnico de récords, por lo que "se otorgan y se computan tan pronto el confinado es ingresado a la institución correccional". Aduce, también, que las bonificaciones que poseen un trámite ante el Comité de Clasificación son las bonificaciones adicionales, es decir, por estudio y trabajo. Como resultado, concluye que el Comité de Clasificación no concede bonificaciones por buena conducta y eso le compete a la División de Remedios. Tiene razón.

Un análisis integral del Plan de Reorganización, *supra*, y los reglamentos aplicables del Departamento de Corrección, nos convence de que erró el Tribunal de Apelaciones al resolver como lo hizo. Éste no reconoció las diferencias que presentan las disposiciones reglamentarias sobre los distintos tipos de abonos. En su lugar, su análisis se limitó a tratar de igual manera a cada bonificación sin analizar con sumo cuidado si los reglamentos aprobados por el Departamento de Corrección establecían diferentes procesos en la concesión de las mismas.

[57] Íd., art. VI. (Énfasis suplido).

Como señalamos, la bonificación adicional consiste en rebajas al término de la sentencia que se conceden por estudio y trabajo rendido por el miembro de la población correccional.[58] Los llamados abonos por buena conducta y asiduidad se conceden si el confinado cumple, entre otras cosas, con el plan institucional trazado.[59] Esa es la primera y más básica diferencia que debemos reconocer. En segundo lugar, de los reglamentos a los que hemos hecho referencia durante nuestra exposición, podemos colegir que el Departamento de Corrección no quiso que los abonos por buena conducta y asiduidad se atendieran de igual manera que la bonificación adicional.[60]

Nótese que **no se trata de evaluar y estructurar el plan institucional** de los confinados, porque eso ciertamente fue delegado y está bajo la autoridad del Comité de Clasificación. Se trata, entre otras cosas, de que la División de Remedios es quien tiene la jurisdicción para atender las solicitudes de remedio sobre todo lo relacionado a actos que afecten, ya sea directa o indirectamente, el plan institucional del confinado. Esto último es lo que sucede con la concesión de bonificación por buena conducta a los miembros de la institución correccional.

---

[58] Véase íd., arts. IV(2) y VII.

[59] Íd., art. IV(5).

[60] Incluso, de una lectura del Reglamento de Bonificación, *supra*, observamos que los abonos por servicios excepcionalmente meritorios se conceden por trámites distintos a la bonificación adicional regular por estudio y trabajo. Véase íd., art. XI.

A ello se suma el hecho de que los abonos por buena conducta y asiduidad están excluidos del ciclo de bonificación.[61] Según el Reglamento de Bonificación, el Comité de Clasificación únicamente evalúa cada período de tiempo -según establecido el ciclo- las bonificaciones por estudio, trabajo y servicios.[62] En otros términos, en cada ciclo la responsabilidad del Comité **se limita exclusivamente a justipreciar la concesión de la <u>bonificación adicional</u>**. Es diáfano que no se hace mención de los abonos por buena conducta y asiduidad. Ello demuestra que la bonificación adicional es tratada de forma distinta y separada a los abonos que pudiera obtener un confinado por su buena conducta y asiduidad.

No hay duda que deben cumplirse ciertos trámites ante el Comité para algunos tipos de bonificaciones. Ello es lo que sucede con la bonificación adicional, que debe ser concedida por el Comité de Clasificación; también ocurre con la bonificación por servicios excepcionalmente meritorios, que el Comité de Clasificación debe solicitarle aprobación al Secretario del Departamento de Corrección para que éste la conceda.[63] Lo anterior no pasa en el caso de abonos por buena conducta. En este último caso el mandato es expreso:

---

[61] El ciclo de bonificación es la "frecuencia con la cual se evaluará el caso ante el Comité de Clasificación y Tratamiento para conceder **bonificación por estudio, trabajo y servicio**". Íd., art. IV(6).

[62] Véase íd., art. IV(6).

[63] Véase íd., art. XI; Regla 4(A)(4) del Manual del Comité de Clasificación, *supra*.

el cómputo de los abonos por buena conducta y asiduidad es responsabilidad del técnico de récords.

La intención de las disposiciones reglamentarias al especificar que el Comité de Clasificación concedía la bonificación adicional, y el técnico de récords la bonificación por buena conducta y asiduidad, era precisamente establecer la separación de autoridad y de funciones de dos organismos del Departamento de Corrección respecto al tipo de bonificación que podía conceder cada uno. Su fin evidente era establecer que la injerencia directa del Comité de Clasificación era respecto a la concesión de bonificación adicional, no así con los abonos por buena conducta y asiduidad.

Si la intención hubiera sido la que sostuvo el foro apelativo, **¿de qué sirve que los reglamentos hagan referencia, aclaren y establezcan, de manera específica y expresa, que el Comité es quien tiene la autoridad de otorgar los abonos adicionales en varias de sus disposiciones?** En ese caso, tal aclaración sería innecesaria. Bastaría con referirse a las bonificaciones de manera general. Después de todo, con esa interpretación **no** existiría diferencia en cuanto al ente administrativo con autoridad para conceder la bonificación adicional y los abonos otorgados por buena conducta y asiduidad, ya que en ambos supuestos la autoridad la tendría el Comité de Clasificación. Si la intención del Secretario del Departamento de Corrección hubiera sido que el Comité

tuviera la facultad de conceder los abonos por buena conducta, así lo hubiera establecido expresamente, tal y como lo hizo con la bonificación adicional. No podemos partir de la premisa de que una agencia consignó en su reglamento expresiones inútiles.

Esta no es la primera vez que utilizamos un razonamiento como éste. En Depto. de Educación v. Díaz Maldonado, *supra*, al resolver si los años de servicio prestados por un maestro mediante un contrato transitorio en el Departamento de Educación debían honrarse como años de experiencia para un aumento de salario una vez se obtenía un nombramiento de carrera, reconocimos que si el legislador hubiera querido hacer una distinción entre el tiempo servido como maestro transitorio o de carrera así lo habría dispuesto notoriamente. Entendimos que el legislador lo había hecho con otros supuestos, pero no en el caso de los maestros transitorios.[64]

A la luz de lo anterior, y luego de analizar en detalle las funciones y responsabilidades de cada entidad administrativa, no podemos colegir alguna disposición que requiera a los miembros de la institución correccional que agoten algún trámite ante el Comité de Clasificación antes de que la División pueda conceder la bonificación por buena conducta y asiduidad. Por el contrario, se desprende que el

---

[64] Para conocer otros casos en que se utilizó un razonamiento similar, véanse: Rodríguez Quintana v. Rivera Estrada, 192 DPR 832, 846-847 (2015) (Opinión de conformidad del Juez Asociado Señor Martínez Torres); Yiyi Motors, Inc. v. ELA, 177 DPR 230, 270 (2009); Roque González & Co. Inc. v. Srio. de Hacienda, 127 DPR 842, 864 (1991) (nota 6) (Opinión disidente del Juez Asociado Señor Hernández Denton); Negrón Soto v. Gobernador, 110 DPR 664, 676 (1981).

Secretario del Departamento de Corrección **le delegó únicamente la facultad para computar la bonificación por buena conducta al técnico de récords.** Por lo tanto, la División de Remedios es el organismo administrativo con jurisdicción para revisar la concesión de la bonificación por buena conducta y asiduidad.

Con ello llegamos a la interpretación más lógica y cónsona con los parámetros de hermenéutica que antes reseñamos. **Una interpretación contraria sería quitarle valor a los propios términos contenidos en los referidos estatutos, lo cual resultaría en un absurdo.** No vemos razón para alejarnos de la interpretación realizada por la agencia.

Dicho lo anterior, pasamos a aplicar la normativa expuesta a los hechos del caso de autos.

### V

El señor Vargas Serrano presentó una solicitud de remedio a la División de Remedios en la que peticionó que le concedieran abonos por buena conducta y asiduidad. **La determinación que denegaba la bonificación fue emitida por la técnica de récords del referido organismo** al entender que la sentencia del recurrido estaba excluida de los abonos por buena conducta y asiduidad. No se trataba en esta ocasión de las llamadas bonificaciones adicionales por estudio y trabajo, ni de bonificación extraordinaria que, ciertamente, tienen trámites ante el Comité de Clasificación. Así pues, debemos concluir que la División de Remedios tenía la

autoridad para atender la solicitud de bonificación presentada por el señor Vargas Serrano. La antedicha solicitud de remedio se atendió según el trámite que estableció el propio Secretario del Departamento de Corrección: por la técnica de récords. Por esa razón, nos es forzoso concluir que erró el Tribunal de Apelaciones al resolver como lo hizo.

**VI**

Por los fundamentos antes expuestos, resolvemos que la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación es el organismo con jurisdicción para atender los reclamos sobre concesiones de bonificaciones por buena conducta y asiduidad. En consecuencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se le devuelve el caso para que atienda las controversias que fueron planteadas originalmente por el recurrido.

Se dictará sentencia de conformidad.

Edgardo Rivera García
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Juan Vargas Serrano          CC-2015-0102          *Certiorari*

    Recurrido

        v.

Institución Correccional

    Peticionario



SENTENCIA


En San Juan, Puerto Rico, a 2 de junio de 2017.

    Por los fundamentos expuestos en la Opinión, los cuales se hacen formar parte de la presente Sentencia, resolvemos que la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación es el organismo con jurisdicción para atender los reclamos sobre concesiones de bonificaciones por buena conducta y asiduidad. En consecuencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se le devuelve el caso para que atienda las controversias que fueron planteadas originalmente por el recurrido.

    Lo pronunció y manda el Tribunal y certifica el Secretario del Tribunal Supremo.



Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo