ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| MARCOS DÍAZ APONTE<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO. DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202200662 | *Revisión Administrativa*<br><br>*Caso Número:*<br>*F1-283-22*<br><br>Sobre: Solicitud de Remedio Administrativo |

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa.

Ortiz Flores, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de enero de 2023.

El señor Marcos Díaz Aponte (Sr. Díaz Aponte o recurrente) solicita nuestra intervención para que revoquemos la *Respuesta en Reconsideración* emitida el 14 de octubre de 2022 por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR o recurrido). En esencia, mediante el referido pronunciamiento, el DCR determinó que no procedía la solicitud instada por el recurrente para que se aplicaran las bonificaciones adicionales por trabajo y estudio al cómputo mínimo de veinticinco (25) años naturales de su sentencia. Este término corresponde a la pena mínima que el recurrente extingue por una condena de noventa y nueve (99) años, por la violación del Artículo 83 del Código Penal de 1974, *Asesinato en Primer Grado.*

Examinados los argumentos del recurrente, los documentos anejados al recurso y, a la luz del derecho aplicable, resolvemos confirmar el dictamen recurrido.

**I**

La causa de epígrafe se inició el 30 de agosto de 2022, ocasión en que el recurrente presentó una *Solicitud de Remedio Administrativo*, ante la División de Remedios Administrativos del DCR.[1] En síntesis, cuestionó que el recurrido adjudicara las bonificaciones al máximo y no al mínimo de su sentencia, así como que no haya utilizado el *Reglamento de bonificación por buena conducta, trabajo, estudio y servicios excepcionalmente meritorios* de 30 de abril de 2010 (Reglamento de 2010).

El DCR emitió una *Respuesta de seguimiento al miembro de la población correccional*.[2] En el formulario se explicó que los sentenciados a noventa y nueve (99) años por el delito de *Asesinato en Primer Grado* les aplica el mínimo de veinticinco (25) años naturales. Por entender que la determinación no fue responsiva, interpuso una oportuna *Solicitud de Reconsideración*.[3] El 14 de octubre de 2022, el DCR denegó la petición, y consignó la siguiente explicación:

> El *Reglamento Interno de Bonificación por Buena Conducta, Trabajo, Estudio y Servicios Excepcionalmente Meritorios* del 30 de abril de 2010, 13 noviembre 2015 y 28 octubre 2020 indica lo siguiente: Se excluyen de los abonos por buena conducta toda convicción que dispone una pena de reclusión de 99 años; reincidencia agravada, reincidencia habitual; multa o años naturales conforme a los códigos penales 1974, 2004, etc. Adicional, el Art. IX*, Normas Concesión Abonos Adicionales*, informa que la bonificación adicional afectar[á] tanto el mínimo como el máximo de cada sentencia. Pero en el caso de sentenciados por *Asesinato Primer Grado* solo serán acreedores de bonificación adicional en el máximo de la sentencia. Cabe señalar que, en la Reglamentación [de la] Junta [de] Libertad Bajo Palabra, el delito [de] *Asesinato [en] Primer Grado* será evaluado cuando haya cumplido 25 años naturales.

Inconforme con el dictamen administrativo, el Sr. Díaz Aponte presentó un recurso de *certiorari* ante nosotros, que acogemos como un recurso de revisión judicial, en el cual esbozó los siguientes señalamientos de error:

---

[1] Véase, Anejo A. El recurrente ya había instado ante este foro intermedio sendas peticiones similares en los casos KLRA201600795, *Sentencia* de 30 de septiembre de 2016; y KLRA201700156, *Sentencia* de 21 de abril de 2017.

[2] Véase, Anejo B.

[3] Véase, Anejo C.

Erró la parte recurrida la Sra. Brenda Alvarado Pagán, técnica de récord Institución Ponce Mínima a la Respuesta de Remedio Administrativo F1-283-22 al denegar las bonificaciones correspondientes según *el Reglamento de Bonificaciones por Buena Conducha, Trabajo, Estudio y Servicios Excepcionalmente Meritorios* de 30 de abril de 2010.

Erró la recurrida por conducto de la c[o]ordinadora Joan Mariani Ortiz al no acatar de plano el dictamen emitido por el Tribunal Apelativo en el caso núm. KLRA-201600099 donde se utilizó como referencia para que se resolviera el presente caso, [s]iendo el mismo de aplicabilidad al aquí peticionario.

Erró la recurrida y la c[o]ordinadora Joan Mariani Ortiz, Brenda Alvarado Pagán, técnica de récord y la evaluadora Maritza Valentín Lugo¨[;] ambas violentaron la reglamentación que aplicaba en dicho caso, las leyes aplicables, así como las secciones uno y siete de la Constitución de Puerto Rico en su Carta de Derechos, igual prote[c]ción de las leyes y el discrimen.

Erró la recurrida por conducto de la técnica de récord penal al computar en la hoja de liquidación de sentencia 99 años a cumplir en años naturales, Código Penal 1974.

Luego de evaluar la *Declaración en Apoyo de Solicitud para Litigar como Indigente*, suscrita el 7 de noviembre de 2022,[4] este tribunal autoriza la litigación *in forma pauperis*. Asimismo, como se sabe, por virtud de la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, este foro revisor puede "prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos", "con el propósito de lograr su más justo y eficiente despacho." 4 LPRA Ap. XXII-B, R. 7 (B) (5). Ello así, eximimos al DCR de presentar su postura.

**II**

**A**

Este Tribunal de Apelaciones tiene jurisdicción para la revisión judicial de las determinaciones finales administrativas emitidas por las agencias, de conformidad con la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAUG), Ley Núm. 38 de 30 de junio de 2017, 3 LPRA sec. 9601 *et seq*. La revisión judicial de las determinaciones finales administrativas se estatuye en la Sección 4.5 de la LPAUG, que dispone lo siguiente sobre nuestro alcance:

---

[4] El expediente contiene un *Recibo de Formulario o Correspondencia Privilegiada* fechado el 8 de noviembre de 2022.

El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene **derecho a un remedio**.

Las **determinaciones de hechos** de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en **evidencia sustancial** que obra en el expediente administrativo.

Las **conclusiones de derecho serán revisables** en todos sus aspectos por el tribunal. 3 LPRA sec. 9675. (Énfasis nuestro.)

Es sabido que los procedimientos y las decisiones de los organismos administrativos están cobijados por una **presunción de regularidad y corrección**. La norma general es que "las decisiones que emiten las agencias de gobierno merecen una **amplia deferencia y respeto**, ya que estas poseen una vasta experiencia y un conocimiento especializado sobre los asuntos que por ley se les ha delegado." *JP Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 186 (2009) (Énfasis nuestro.)

A tenor de lo anterior, "las determinaciones de hechos de una agencia se sostendrán si se fundamentan en evidencia sustancial que obre en el expediente administrativo." *Id*., a las págs. 186-187. En cuanto a las conclusiones de derecho, estas serán revisables en todos sus aspectos por el foro apelativo. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 469 (2009). Ahora bien, los foros judiciales tampoco podemos descartar liberalmente las conclusiones e interpretaciones de la agencia de las leyes y reglamentos que administran. La revisión judicial no sustituirá de forma automática el criterio e interpretación del organismo administrativo. Al respecto, nuestro más Alto Foro ha expresado que la revisión judicial de las interpretaciones que realiza una agencia sobre los reglamentos y las leyes que administran merecen gran peso por parte de los tribunales. "Esta deferencia tiene origen en el axioma que nos impide soslayar que son las agencias las que poseen la experiencia y el conocimiento especializado acerca de los asuntos que se le han encomendado." *Vargas Serrano v. Inst. Correccional*, 198 DPR 230, 237 (2017). Por ello, al revisar las decisiones de las agencias, "el criterio

rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque esta no tiene que ser la única o la más razonable." *Íd.* Aun en los casos dudosos, y aun cuando pueda haber una interpretación distinta, "la determinación de la agencia merece deferencia sustancial". 177 DPR, a la pág. 187. A esos efectos, **la deferencia y presunción de corrección de la determinación administrativa únicamente se descartará cuando no exista fundamento racional que justifique el dictamen impugnado**. *Rolón Martínez v. Caldero López,* 201 DPR 26, 36 (2018).

**B**

La *Exposición de Motivos* del *Plan de Reorganización del Departamento de Corrección y Rehabilitación* Núm. 2 de 2011, 3 LPRA Ap. XVIII (Plan Núm. 2-2011), entre otros objetivos, aspira a fomentar los procesos de rehabilitación moral y social del miembro de la población correccional, a fin de lograr su reincorporación a la sociedad. A esos fines, regula la aplicación de bonificaciones por buena conducta, estudio, trabajo y servicios. En virtud del Plan Núm. 2-2011, el Secretario del DCR promulgó el *Reglamento interno de bonificación por buena conducta, trabajo, estudio y servicios excepcionalmente meritorios*, de 28 de octubre de 2020 (Reglamento de 2020).

En lo pertinente a las cuestiones planteadas, luego de describir la forma de aplicar las bonificaciones por estudio, trabajo o servicios,[5] el Artículo 12 del Plan Núm. 2-2011, 3 LPRA Ap. XVIII, Art. 12, establece que "**[a] toda persona sentenciada a cumplir pena de reclusión por hechos cometidos con anterioridad a** [. . .] **la vigencia del Código Penal de Puerto Rico de 2004** [. . .] **el Secretario podrá conceder bonificaciones**." (Énfasis nuestro.) Añade también la disposición que "**todo** miembro de la población correccional sentenciado a la pena de

---

[5] El ordenamiento define el término *bonificación* como "la rebaja del término de la sentencia de un miembro de la población correccional conforme al Plan de Reorganización Núm. 2-2011, según enmendado"; mientras que la frase *bonificación adicional* se define como "los abonos concedidos por el Comité de Clasificación y Tratamiento al miembro de la población correccional por [. . .] trabajo y estudios realizados." Refiérase al Art. IV (1) (2) del Reglamento de 2020, *Reglamento interno de bonificación por buena conducta, trabajo, estudio y servicios excepcionalmente meritorios* de 28 de octubre de 2020.

noventa y nueve (99) años **antes** del 20 de julio de 1989 [. . .] será bonificado a tenor con lo dispuesto en este Artículo". (Énfasis nuestro.) Ello así porque, como norma general, la bonificación adicional incide tanto al mínimo como al máximo de la sentencia.

En armonía con lo anterior, el inciso (9) del Artículo VIII, *Abonos Adicionales*, del Reglamento de 2020 concede a **todo** miembro de la población correccional sentenciado a cumplir pena de reclusión por **hechos cometidos con anterioridad a** [. . .] **la vigencia del Código Penal de Puerto Rico de 2004 y el Código Penal de 2012**, **el derecho a recibir bonificaciones por estudio y trabajo** conforme lo establece el Plan Núm. 2-2011. Esta bonificación será acreditada o rebajada al mínimo y máximo de la sentencia **en aquellos casos que legalmente corresponda**. No obstante, el inciso (1) del Artículo IX del Reglamento de 2020, *Normas para la Concesión de Abonos Adicionales*, distingue a los confinados sentenciados por *Asesinato en Primer Grado* **después** de 20 de julio de 1989. **Estos únicamente serán acreedores de la bonificación adicional por estudio, trabajo o servicio al máximo de la sentencia**. En aquella parte que nos atañe, la disposición establece:

> La bonificación adicional afectará tanto el mínimo como el máximo de cada sentencia. En el caso de miembros de la población correccional sentenciados por el delito de *Asesinato en Primer Grado* **luego** del 20 de julio de 1989, **solo serán acreedores de bonificación adicional al máximo de la sentencia**.
>
> **El mínimo de sentencia en estos casos bajo el Código Penal de 1974** y 2004, **corresponde a veinticinco (25) años naturales si la persona hubiera sido adulta al momento de la comisión del delito** y diez (10) años como menor y exclusivamente para efectos de referido ante la Junta de Libertad Bajo Palabra. [. . .] (Énfasis nuestro.)

Cónsono con este último párrafo, el Artículo 3 de la Ley Núm. 118 de 22 de julio de 1974, *Ley de la Junta de Libertad Bajo Palabra*, 4 LPRA sec. 1503 (Ley Núm. 118), dispone en el inciso (a) (1) que "[s]i la persona ha sido convicta de **delito grave de primer grado** o se ha determinado reincidencia habitual, **puede ser considerada para libertad bajo palabra al cumplir veinticinco (25) años naturales de su sentencia**, o

diez (10) años naturales, si se trata de un menor procesado y sentenciado como adulto." (Énfasis nuestro.) Cabe destacar que el criterio del mínimo de la sentencia de veinticinco (25) años naturales en las convicciones por delitos graves de primer grado, como lo es el *Asesinato en Primer Grado*, provee para que, cumplido el término, la Junta de Libertad Bajo Palabra adquiera jurisdicción sobre la persona confinada y pueda evaluar si le concede o no el privilegio. Este criterio es independiente de aquellos establecidos en el Plan Núm. 2-2011, en la aplicación de las bonificaciones.

**III**

En la presente causa, el Sr. Díaz Aponte aduce que el DCR incidió al no acreditar bonificaciones por estudio, trabajo y servicios al mínimo de veinticinco (25) años naturales de la sentencia que extingue por *Asesinato en Primer Grado*. Alega, además, que le aplica el Reglamento de 2010, el cual antecede la puesta en vigor del Plan Núm. 2-2011, hoy vigente.

Sobre la reglamentación aplicable al caso del recurrente, es meritorio recalcar que el Sr. Díaz Aponte instó su *Solicitud de Remedio Administrativo* el 30 de agosto de 2022, por lo que es forzoso concluir que el Reglamento de 2020 es el que rige el procedimiento. La reglamentación ha sido atemperada a las enmiendas legislativas al Plan Núm. 2-2011 y a la Ley Núm. 118 hasta la fecha de su aprobación. Además, el Artículo II del Reglamento de 2020 establece una aplicación general "a toda persona sentenciada a cumplir pena de reclusión."[6]

---

[6] El Reglamento de 2020 derogó a su homónimo de 3 de junio de 2015, el cual, a su vez, derogó el *Reglamento de bonificación por buena conducta, trabajo, estudio y servicios excepcionalmente meritorios* de 10 de diciembre de 2013. Este último fue el que derogó el Reglamento de 2010. Nótese que este último es la única reglamentación previa al Plan Núm. 2-2011.

Asimismo, al Sr. Díaz Aponte no le asiste la razón cuando afirma que en el caso *Jorge Marín Robles v. Departamento de Corrección y Rehabilitación*, KLRA201600099 (Anejo E), se aplicó el Reglamento de 2010. De una lectura a la página 9 del dictamen se desprende que el recurrente de ese caso instó su solicitud el 13 de noviembre de 2015, cuando ya había entrado en vigor el *Reglamento interno de bonificación por buena conducta, trabajo, estudio y servicios excepcionalmente meritorios* de 3 de junio de 2015. Cabe resaltar, además, que el recurrente de ese caso, entre otras condenas, fue convicto con una pena de noventa y nueve (99) años de reclusión por infringir el Artículo 99 del Código Penal de 1974, *Violación*, no el de *Asesinato en Primer Grado* como el Sr. Díaz Aponte. Debido a que la reglamentación no excluía el delito de *Violación*, entonces, a ese recurrente le aplicó la bonificación adicional tanto al mínimo como al máximo de su sentencia. Además, a diferencia del Sr. Díaz Aponte, cuyo mínimo de la sentencia es

En este caso, por hechos acontecidos el 14 de mayo de 1999,[7] un jurado emitió un veredicto de culpabilidad contra el Sr. Díaz Aponte por infringir los Artículos 6 (GLA1999G0262, cuatro años concurrentes los dos cargos) y 8 (GLA1999G0259, cinco años concurrentes los dos cargos) de la derogada Ley de Armas de 19 de enero de 1951,[8] así como por la violación al Artículo 83 del Código Penal de 1974 (GVI1999G0050, noventa y nueve años).[9] **El recurrente fue sentenciado el 23 de diciembre de 1999 a cumplir las condenas de manera consecutiva**. Actualmente, continúa confinado bajo la custodia del DCR, donde extingue la sentencia de noventa y nueve (99) años de reclusión, por la comisión del delito de *Asesinato en Primer Grado*. De conformidad con la *Hoja Control sobre Liquidación de Sentencia*, la **pena mínima** de veinticinco (25) años naturales por este delito se cumplirá el 29 de mayo de 2027.[10]

Tal como reseñamos, el Artículo 12 del Plan Núm. 2-2011 establece el proceso para las bonificaciones por trabajo, estudio o servicios.[11] Estos privilegios aplican al recurrente, quien fue sentenciado por hechos cometidos con anterioridad a la vigencia del Código Penal de 2004. Ahora, el Reglamento de 2020 especifica que los miembros de la población correccional sentenciados por el delito de *Asesinato en Primer Grado* **luego** de 20 de julio de 1989 solo serán acreedores de la bonificación adicional al **máximo** de su sentencia. La razón es que la pena mínima de este delito es de veinticinco (25) años naturales. Por lo tanto, en estos casos no se aplican las bonificaciones adicionales al

---

veinticinco (25) años naturales, el mínimo de la sentencia del recurrente del caso citado era de cuarenta y nueve y medio (49.5) años; véase, la página 10 del dictamen.

[7] Tomamos conocimiento judicial de la *Sentencia* del caso *El Pueblo de Puerto Rico v. Marcos Díaz Aponte y Héctor Correa Green*, KLAN200000064, KLAN200000080 dictada el 21 de junio de 2001.

[8] Las sanciones penales máximas por las infracciones a los Artículos 6 y 8 de Ley de Armas vigente a los hechos, cumplidas consecutivamente entre sí y con el delito de *Asesinato en Primer Grado*, fueron extinguidas el 11 de julio de 2002 y 29 de enero de 2005, respectivamente. Véase, Anejo F.

[9] Además, se le condenó por reincidencia.

[10] Véase, Anejo F.

[11] El Artículo 11 del Plan Núm. 2-2011, 3 LPRA Ap. XVIII, Art. 11, atiende la bonificación por buena conducta, inaplicable al caso de autos ya que excluye las condenas que aparejen sentencias de noventa y nueve (99) años de reclusión.

mínimo de la sentencia. De esta forma, no se transgrede el término de veinticinco (25) años naturales que el miembro de la población correccional está compelido a extinguir como mínimo, previo a que pueda ser referido ante la Junta de Libertad Bajo Palabra. Es decir, para solicitar el privilegio de libertad bajo palabra, el recurrente deberá extinguir la condena de veinticinco (25) años naturales para que la Junta de Libertad Bajo Palabra pueda asumir jurisdicción sobre su persona y evaluar su elegibilidad. A la luz de lo anterior, concluimos que el DCR no cometió los errores señalados. Por las disposiciones legales y reglamentarias antes discutidas, el DCR está impedido de acreditar las bonificaciones adicionales de estudio, trabajo y servicios al mínimo de la sentencia impuesta al recurrente.

**IV**

Por los fundamentos antes expuestos, se confirma la *Respuesta de Reconsideración* recurrida.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones