ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| L. I. PETROLEUM CORP.<br><br>Recurrente<br><br>v.<br><br>VP PETROLEUM, LLC OFICINA DE GERENCIA DE PERMISOS<br><br>Recurridos | KLRA202400085 | *REVISIÓN ADMINISTRATIVA* procedente de la Oficina de Gerencia de Permisos (OGPe)<br><br>Caso Núm.: 2020-346154-CCO-007244<br><br>Sobre: CONSULTA DE CONSTRUCCIÓN ESTACIÓN DE GASOLINA |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de marzo de 2024.

Comparece ante *nos*, L.I. Petroleum Corp. (recurrente) y nos solicita que revisemos la *Resolución* emitida por la División de Revisiones Administrativas (DRA) de la Oficina de Gerencia de Permisos (OGPe) del 18 de enero de 2024. Mediante dicho dictamen, el DRA declaró *No Ha Lugar* la *Solicitud de Revisión Administrativa* que presentó la recurrente ante dicho foro el 20 de septiembre de 2023 y, en consecuencia, confirmó la *Resolución* del 28 de agosto de 2023, notificada el 31 de agosto de 2023, por la OGPe, aprobando la consulta para la construcción de una estructura en materiales mixtos, de una (1) planta, con facilidades para el uso de estación de gasolina, venta de artículos de uso corriente en el hogar y venta de accesorios para automóviles, solicitada por VP Petroleum, LLC. (recurrida), bajo el número de caso 2020-346154-CCO-007244.

Por los fundamentos que expondremos a continuación, se *confirma* la *Resolución* de la cual se recurre.

Número Identificador

SEN2024_____

**I.**

Surge del expediente ante *nos* que, la parte recurrida presentó ante la consideración de la Junta Adjudicativa de la OGPe una Solicitud de Consulta de Construcción 2020-346154-CCO-007244 para la construcción de una estación de gasolina en la Carretera PR-670, Esquina PR-137 del Barrio Pugnado Afuera del Municipio de Vega Baja. En dicha solicitud, la parte recurrida explicó que la consulta de construcción no contemplaba variaciones a parámetros de diseño y que el proyecto se presentada como una consulta de construcción por ser el único mecanismo discrecional con requerimiento de vista pública bajo las disposiciones del Reglamento Conjunto 2020.

Consecuentemente, el 3 de febrero de 2022, la parte recurrente presentó una solicitud de intervención. El 7 de febrero de 2022, la OGPe emitió una *Resolución* mediante la cual permitió la intervención de la parte recurrente. Así, la OGPe llevó a cabo vistas públicas sobre la Solicitud de Consulta de Construcción que presentó la parte recurrida. Dichas vistas públicas se llevaron a cabo los días 21 de septiembre de 2022 y 10 de marzo de 2023. Surge del expediente que, la recurrente participó de las vistas públicas y contrainterrogó la prueba de la recurrida. Posteriormente, la recurrente presentó un *Memorando Post Vista*.

Luego, el 28 de agosto de 2023, la OGPe emitió una *Resolución*, notificada el 31 de agosto de 2023, mediante la cual aprobó la Solicitud de Consulta de Construcción que presentó la parte recurrida bajo el número de caso 2020-346154-CCO-007244. Así las cosas, el 20 de septiembre de 2023, la recurrente presentó una *Solicitud de Revisión Administrativa* ante la DRA de la OGPe bajo el número 2023-511360-SDR-013589. Oportunamente, el 2 de octubre de 2023, la DRA de la OGPe emitió una *Notificación Acogiendo Solicitud de Revisión Administrativa*.

El 26 de octubre de 2023, la DRA llevó a cabo una Vista para atender la *Solicitud de Revisión Administrativa* que presentó la parte recurrente. El 10 de noviembre de 2023, las partes presentaron sus correspondientes memorandos post vista. Subsiguientemente, el 18 de enero de 2024, la DRA emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la *Solicitud de Revisión Administrativa.*

Inconforme con esa determinación, el 20 de febrero de 2024, la parte recurrente acudió ante *nos* mediante un recurso de revisión judicial, alegando la comisión de los siguientes errores:

**PRIMER ERROR:**

**ERRÓ LA DROGPE AL DECLARAR NO HA LUGAR LA SOLICITUD DE REVISIÓN ADMINISTRATIVA CONFIRMANDO LA RESOLUCIÓN DE LA OGPE, APROBANDO LA CONSULTA DE CONSTRUCCIÓN IMPUGNADA A PESAR DEL CLARO INCUMPLIMIENTO CON EL REQUISITO REGLAMENTARIO DE LOTIFICACIÓN PREVIA Y A PESAR DE QUE LA PARTE PROPONENTE INCUMPLIÓ CON EL REQUISITO INDISPENSABLE DE DEMOSTRAR LA DISPONIBILIDAD DE LA INFRAESTRUCTURA REQUERIDA.**

**SEGUNDO ERROR:**

**ERRÓ LA DROGPE AL DECLARAR NO HA LUGAR LA SOLICITUD DE REVISIÓN ADMINISTRATIVA CONFIRMANDO ASÍ LA RESOLUCIÓN DE LA OGPE APROBANDO LA CONSULTA DE CONSTRUCCIÓN IMPUGNADA, A PESAR DE QUE LA RECURRIDA VP PRETROLEUM CORP. PRESENTÓ UN ESTUDIO DE VIABILIDAD INCOMPLETO.**

El 22 de febrero de 2024, emitimos una *Resolución* mediante la cual le concedimos un término de veinte (20) días a la parte recurrida para que presentara su posición al recurso. El 13 de marzo de 2023, la parte recurrida presentó un *Alegato en Oposición a Recurso de Revisión Judicial.* Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**A. Revisión judicial de las determinaciones administrativas**

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección,* 174 DPR 247, 254-255 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 590-592 (2020); *Empresas Ferrer, v. ARPe,* 172 DPR 254, 264 (2007).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección, *OCS v. CODEPOLA,* 202 DPR 842, 852-853 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821 (2012).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de

las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 127 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36-37 (2018)*.* Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016). Lo anterior responde a la vasta experiencia y conocimiento especializado que tienen las agencias sobre los asuntos que le son encomendados. *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque ésta no tiene que ser la única o la más razonable. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230, 237 (2017). Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales

fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923, 940 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018), las determinaciones de derecho pueden ser revisadas en su totalidad. *Torres Rivera v. Policía* de PR, *supra,* pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v.* Y *Motors,* 161 DPR 69, 77 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009). "En esas circunstancias, [el foro apelativo] cederá la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra". *Rolón Martínez v. Supte. Policía, supra.*

### B. Ley 161-2009

Mediante la Ley Núm. 161-2009, conocida como la Ley para la Reforma del Proceso de Permisos de Puerto Rico, según enmendada (23 LPRA sec. 9011 *et seq.*), se crearon varios organismos destinados a atender los diversos aspectos del proceso

de permisos, entre los cuales está la OGPe. La OGPe es la entidad encargada de la evaluación, concesión o denegatoria de determinaciones finales y permisos relativos al desarrollo y el uso de terrenos, así como de las consultas de ubicación. Artículo 2.5 de la Ley Núm. 161-2009 (23 LPRA sec. 9012d).

En lo que atañe al recurso de revisión judicial presentado, parte de las facultades de la OGPe consisten en la aprobación o denegatoria de las solicitudes de consulta de ubicación. La consulta de ubicación tiene como propósito realizar una evaluación y determinación sobre los usos de terrenos propuestos, que no sean permitidos ministerialmente, y que, debido a la naturaleza y complejidad del uso propuesto, requiera un grado mayor de análisis. Artículo 1.5 de la Ley Núm. 161-2009 (23 LPRA sec. 9011 (14)). En el caso de una consulta de ubicación, la determinación final no constituye el otorgamiento de un permiso. Íd., sec. 9011 (21). La consulta de ubicación es un instrumento de planificación mediante el cual se evalúa, considera y autoriza o deniega una propuesta sobre el uso de un terreno particular.[1]

Asimismo, el Artículo 6.1 de la Ley para la Reforma de Permisos de Puerto Rico creó la Junta Adjudicativa, organismo al que se le delegó la responsabilidad de evaluar y adjudicar solicitudes de carácter discrecional. (23 LPRA sec. 9016e). El término discrecional se refiere a "una determinación que conlleva juicio subjetivo por parte de la Junta Adjudicativa [...] sobre la forma en que se conduce o propone una actividad o acción". Artículo 1.5 de la Ley Núm. 161-2009 (23 LPRA sec. 9011 (26)). Así pues, el cuerpo evaluador utiliza su conocimiento especializado, discreción y juicio para llegar a una determinación, la cual no se limita a cuestiones

---

[1] *Borschow Hosp. v. Jta. de Planificación,* 177 DPR 545, 557 (2009).

ministeriales de estándares fijos o medidas objetivas, sino que considera otros asuntos. Íd.

En sentido contrario, la determinación de carácter ministerial es aquella que no conlleva juicio subjetivo por parte de un funcionario público o profesional autorizado sobre la forma en que se conduce o propone una actividad o acción. Artículo 1.5 de la Ley Núm. 161-2009 (23 LPRA sec. 9011 (48)). La determinación no está sujeta a juicios discrecionales o personales, sino que se trata exclusivamente de la aplicación de los requisitos específicos de las leyes o reglamentos a los hechos presentados. Íd.

### C. Reglamento Conjunto 2020[2]

#### a. Lotificación

El Tomo XII del Reglamento Conjunto 2020 define el término lotificación como:

> [s]e refiere a la división de una finca en dos (2) o más partes para la venta, traspaso, cesión, arrendamiento, donación, usufructo, uso, censo, fideicomiso, división de herencia o comunidad, o para cualquier otra transacción; así como para la construcción de uno (1) o más edificios; la constitución de una comunidad de bienes sobre un solar, predio o parcela de terreno, donde se le asignen lotes específicos a los comuneros; así como para la construcción de uno (1) o más edificios; e incluye también urbanización, según se define en la reglamentación aplicables y, además, una mera segregación.

De otro lado, la Sección 2.2.3.8 del Reglamento Conjunto 2020 establece que:

> a. La estructura ubicará en un solar con tamaño suficiente para proveer el estacionamiento requerido.
> b. El proyecto podrá incluir el desarrollo de una o más estructuras principales en un mismo solar si se propone segregar el mismo, de manera que cada estructura ubique en un solar independiente con accesos y estacionamiento independientes.
> c. Cuando se combinen usos comerciales y residenciales en una sola estructura, los accesos al estacionamiento, los cómputos de estacionamiento y las aceras serán separados e independientes para cada uso.

---

[2] Reconocemos que el Reglamento Conjunto 2020 fue declarado nulo por el Tribunal Supremo de Puerto Rico en el caso *Martínez Fernández v. QMC Telecom, LLC*, 2023 TSPR 75, 212 DPR ___ (2023). No obstante, aun cuando la determinación entró en vigor a partir del 16 de junio de 2023, el caso ante *nos* fue atendido por la OGPe bajo el Reglamento Conjunto 2020. Por lo que, según resuelto en *Martínez Fernández v. QMC Telecom, LLC, supra*, el efecto de la declaración de nulidad es prospectivo y no afecta los permisos expedidos o que estuvieran pendientes a la fecha de la opinión.

Cónsono con lo anterior, la Sección 5.1.1.1. del Reglamento Conjunto 2020 establece que:

   a. Cuando un predio de terreno no se proponga en su totalidad para desarrollo, se proveerá aquella capacidad adicional en la infraestructura con acceso público o privado debidamente dedicado, a la infraestructura dentro del remanente para suplir las necesidades que generaría un desarrollo similar al propuesto en el remanente, si la totalidad del remanente estuviera dentro del suelo urbano.
   b. Si el remanente está fuera del suelo urbano o si la segregación solicitada completa la lotificación, no se permitirá proveer capacidad adicional en la infraestructura para proveer desarrollos futuros.

Asimismo, la Sección 5.1.1.3 del Reglamento Conjunto 2020 establece que:

   No se constituirá ningún edificio ni se dispondrá en forma alguna de ningún terreno, ni se expedirá permiso alguno para uso de terrenos o para edificaciones, hasta tanto el Plano de Inscripción correspondiente haya sido aprobado, salvo en los siguientes casos:
   a. Urbanizaciones – Se podrá autorizar la construcción de las estructuras conjuntamente con las obras de urbanización sin haberse autorizado los planos de inscripción.
   b. Lotificaciones Producto de Reparcelación – Se podrá imponer limitación al uso o disposición, aun luego de aprobarse el Plano de Inscripción, hasta tanto se construyan y acepten las obras de urbanización necesarias para los usos contemplados en el Plan Territorial o en este Reglamento.

### b. Estaciones de Gasolina

El Reglamento Conjunto 2020 define el término Consulta de Construcción como el "trámite ante la OGPe, sobre un proyecto de uso ministerial, pero que conlleva variaciones a los parámetros de construcción del distrito donde ubica, el cual será adjudicado por la Junta Adjudicativa o Municipio Autónomo con Jerarquía de la I a la III".

Así, la Sección 8.8.1.1 del Reglamento Conjunto establece que, "[l]a OGPe o el Municipio Autónomo con Jerarquía de la I a la III entenderán, sujeto a lo establecido en esta Sección, en toda solicitud para una nueva estación de gasolina en los distritos permitidos por este Reglamento". Además, la Sección 8.8.1.2 del mencionado reglamento establece que,

[t]oda solicitud para una nueva estación de gasolina o ampliación a una existente que conlleve un aumento en el número de despachadores existentes, mayor a un cincuenta por ciento (50%), deberá ser acompañada de una certificación donde conste que han sido notificados de la intención de establecer dicha estación de gasolina todos los distribuidores, mayoristas, dueños o arrendatarios de estaciones de gasolina que radiquen dentro del perímetro establecido más adelante a propósito del estudio de viabilidad. Dicha certificación incluirá el nombre y la dirección de las personas notificadas.

Consecuentemente, la Sección 8.8.1.4 del Reglamento Conjunto 2020 sobre el estudio de viabilidad establece que:

a. Toda solicitud para una nueva estación de gasolina o ampliación a una existente que conlleve un aumento en el número de despachadoras existentes, mayor a un cincuenta por ciento (50%), deberá ser acompañada de un estudio de viabilidad que demuestre la necesidad y conveniencia del establecimiento de la misma.
b. Dicho estudio deberá considerar, con respecto al sector dentro del perímetro de mil seiscientos (1,600) metros radiales, los siguientes aspectos:
1. La concentración poblacional.
2. La concentración del tránsito vehicular, de los residentes en el área de mercado.
3. Intensidad de los usos comerciales, industriales e institucionales.
4. Negocios similares existentes dentro del sector.
5. Impacto anticipado del nuevo establecimiento sobre aquellos de naturaleza similar existentes dentro de dicho perímetro.
6. La forma de operación de la nueva estación, esto es, si es de tipo convencional o de autoservicio.
7. Análisis de tránsito que considere la demanda a satisfacer de los residentes en el área de mercado, el tránsito esperado y el impacto sobre las vías existentes.
c. Considerar la cercanía a áreas naturales protegidas y cuerpos hídricos superficiales y subterráneos.
d. Cualesquiera otros factores relevantes que merezcan consideración en relación con la propuesta estación de gasolina.

**III.**

Mediante el primer señalamiento de error, la parte recurrente adujo que erró la DRA al declarar *No Ha Lugar* la *Solicitud de Revisión Administrativa* confirmando la *Resolución* de la OGPe, aprobando la consulta de construcción impugnada a pesar del claro incumplimiento con el requisito reglamentario de lotificación previa y a pesar de que la parte proponente incumplió con el requisito indispensable de demostrar la disponibilidad de la infraestructura requerida.

Según surge del derecho que antecede, el trámite de lotificación previa no es aplicable durante la etapa de la consulta de construcción, sino durante la etapa posterior que es la del trámite de permiso de construcción. Así, surge de las determinaciones de hechos que, la consulta de construcción se propone en un predio de terreno para el cual se suscribió un contrato de arrendamiento. Dicho predio es parte de una finca mayor y fue delimitado en el plano presentado para la consulta. Según surge del expediente de la agencia administrativa, así como de la *Resolución* recurrida, el proyecto no conlleva variaciones en construcción. Además, debemos dejar claro que el proyecto trata sobre una consulta de construcción para una propuesta estación de gasolina. Es decir, no es un permiso de construcción ni un permiso de uso. Por lo que, la Sección 5.1.1.3 del Reglamento Conjunto 2020 no es de aplicación. Dicha sección es de aplicación al momento de presentar el permiso de construcción correspondiente.

Así pues, reiteramos que el Reglamento Conjunto 2020 no exige la lotificación previa como condición o requisito a la aprobación de una consulta de construcción. Por lo cual, no incidió la DRA al declarar *No Ha Lugar* la *Solicitud de Revisión Administrativa* confirmando la *Resolución* de la OGPe.

De otro lado, es menester dejar claro que la propiedad donde se propone el proyecto es para el uso de estaciones de gasolina. De una revisión del expediente ante *nos* surge que, el uso de gasolinera es permitido ministerialmente en el distrito en que ubica la propiedad y que el mismo cumple con los parámetros de construcción aplicables. Así, no debemos perder de perspectiva que la determinación de carácter ministerial es aquella que no conlleva juicio subjetivo por parte de un funcionario público o profesional autorizado sobre la forma en que se conduce o propone una actividad o acción. Artículo 1.5 de la Ley Núm. 161-2009, *supra.* Es

decir, la determinación no está sujeta a juicios discrecionales o personales, sino que se trata exclusivamente de la aplicación de los requisitos específicos de las leyes o reglamentos a los hechos presentados. Íd.

En su segundo señalamiento de error, la parte recurrente planteó que erró la DRA al declarar *No Ha Lugar* la *Solicitud de Revisión Administrativa* confirmando así la *Resolución* de la OGPe aprobando la consulta de construcción impugnada, a pesar de que la recurrida presentó un estudio de viabilidad incompleto. No le asiste la razón.

Según la Sección 8.8.1.4 del Reglamento Conjunto 2020, el fin del estudio de viabilidad es demostrar la necesidad y conveniencia del establecimiento de la nueva estación de gasolina. En el caso ante *nos*, la parte recurrente sostiene que el estudio de viabilidad no contiene el análisis que versa sobre la consideración de la cercanía del proyecto a las áreas naturales protegidas y los cuerpos de agua porque dicho requisito no existía previo al Reglamento Conjunto 2020 cuando se preparó el estudio de viabilidad. Señaló que el estudio de viabilidad debe ser actualizado.

Sin embargo, las agencias concernidas realizaron la evaluación ambiental y emitieron la correspondiente Determinación de Cumplimiento Ambiental para Evaluación Ambiental el 21 de junio de 2021. Además, en el informe *post* vista se complementó la información para el estudio de viabilidad. Por consiguiente, la DRA tomó en consideración la información de las áreas naturales y los cuerpos de agua al considerar el estudio de viabilidad completo.

En consecuencia, luego de una evaluación detenida del expediente ante nuestra consideración junto al derecho aplicable, entendemos que la OGPe y la DRA actuaron de forma razonable. Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad

y corrección y que son las agencias administrativas quienes ostentan el peritaje en aquellas materias que le han sido delegadas por ley. Véase, *OCS v. CODEPOLA, supra; OCS v. Universal, supra.*

Así, sostenemos que el remedio concedido por la DRA fue apropiado, las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial y las conclusiones de derecho fueron correctas.

## IV.

Por los fundamentos antes expuestos, *confirmamos* la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

La jueza Álvarez Esnard concurre sin voto escrito.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones