ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| R&B POWER, INC.<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DE LA ADMINSITRACIÓN DE SERVICIOS GENERALES DE PUERTO RICO<br><br>Recurrida | KLRA202400262 | REVISIÓN ADMINISTRATIVA Procedente de la Junta de Subastas de la Administración de servicios Generales de Puerto Rico<br><br>Caso núm.: JR-22-186<br><br>Sobre: SOLICITUD DE REVISIÓN DE RECHAZO GLOBAL DE SUSBASTA |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 18 de julio de 2024.

Comparece ante nos R&B Power, LLC (R&B o parte recurrente) mediante un *Recurso de Revisión de Subasta.* Nos solicita la revocación de la *Resolución de Rechazo Global* emitida y notificada el 31 de agosto de 2022 por la Junta de Subastas de la Administración de Servicios Generales (Junta de Subastas o parte recurrida). Mediante el referido dictamen, la agencia resolvió que R&B incumplió con la Especificación Núm. UEA-23-018.7, que establece la fuerza de caballos correspondiente a las excavadoras compactas objeto de la subasta.

Por los fundamentos que expondremos a continuación, se *confirma* el dictamen recurrido.

**I.**

El 19 de julio de 2022, la Junta de Subastas publicó una invitación a la Subasta Formal 23-J-00121 (Subasta 23J) sobre la adquisición de unas excavadoras compactas para el Departamento de Trasportación y Obras Públicas (DTOP). El 1 de agosto de 2022,

las partes celebraron una reunión pre-subasta con el propósito de atender las dudas relacionadas con el *Pliego de Subasta Formal Núm. 23J-00121.* El aludido documento contenía las especificaciones, los requisitos y los términos vinculados con la propuesta de los licitadores.

La fecha límite para remitir las preguntas correspondía al 2 de agosto de 2022. No obstante, el 8 de agosto de 2022, la Junta de Subastas notificó la Enmienda Número 1 recogida en la Especificación Núm. UEA-23-01. En esta, aumentó la medida de treinta y nueve caballos de fuerza (39hp) a cuarenta y ocho caballos de fuerza (48hp). Ante tal modificación, R&B cursó una carta a la Junta de Subastas, en la cual indicó que dicha enmienda favorecía a Multi-Ventas y Servicios PR, Inc. (MVSPR), lo cual constituye una acción conocida como *bid tailoring.* Además, solicitó una nueva reunión pre-subasta, sin embargo, el organismo recurrido rechazó tal proposición.

Así las cosas, la agencia recurrida celebró el acto de apertura de subasta. En dicho proceso participaron R&B y González Trading mediante la presentación de sus ofertas. Evaluadas sus propuestas, el 31 de agosto de 2022, la Junta de Subastas emitió y notificó una *Resolución de Rechazo Global.* En virtud de tal determinación, resolvió que las entidades participantes incumplieron con la Especificación Núm. UEA-23-018.7, que contiene la indicación requerida de la fuerza de caballos que debían exhibir las excavadoras compactas objeto del litigio.

Oportunamente, el 20 de septiembre de 2022, R&B presentó un recurso de revisión ante la Junta Revisora de Subastas. No obstante, el 8 de noviembre de 2022, la Junta Revisora desestimó el recurso por no cancelar los aranceles a tenor con la *Carta Circular*

*Núm.* 2021-06. En efecto, resolvió que carecía de jurisdicción, toda vez que el recurso no se perfeccionó.

Inconforme con la determinación agencial, el 9 de noviembre de 2022, R&B acudió ante este Tribunal de Apelaciones mediante un recurso de revisión judicial. Evaluada la totalidad del expediente, el 8 de febrero de 2023, esta Curia emitió una *Sentencia* en la cual desestimó el recurso bajo el entendido de que R&B no canceló aranceles y no agotó los remedios administrativos.[1]

No obstante, el 13 de marzo de 2024, el Tribunal Supremo de Puerto Rico dictaminó una *Opinión* y *Sentencia* en la cual revocó la determinación del Tribunal Apelaciones, y a su vez, decretó la nulidad de la tarifa prescrita en la *Carta Circular Núm.* 2021-06. Véase, *R&B Power, Inc. v. Junta de Subastas*, 2024 TSPR 24, 13 DPR ___ (2024). Al respecto, nuestro máximo Foro dispuso el siguiente razonamiento legal:

> [a]l arribar a esta conclusión, razonamos, como corolario, que la solicitud de revisión que R&B Power instó ante la Junta Revisora se perfeccionó conforme a derecho, pues, para ello, no tenía que satisfacer arancel alguno. En ese sentido, la Junta Revisora no tiene impedimento para asumir jurisdicción y considerar en sus méritos la referida solicitud.

Consecuentemente, devolvió el caso a la Junta Revisora para que atendiera en sus méritos la solicitud de revisión instada por R&B. A esos efectos, el 8 de abril de 2024, este Tribunal de Apelaciones notificó el correspondiente *Mandato* a la Junta Revisora. No obstante, R&B alega que transcurrido treinta (30) días posteriores a la emisión del *Mandato*, la Junta Revisora no se ha expresado en torno a la solicitud de revisión. Ante tal circunstancia, considera que dicho cuerpo revisor rechazó de plano su petición.

Inconforme con el proceder administrativo, el 24 de mayo de 2024, acudió ante *nos* mediante un escrito intitulado *Recurso de*

---

[1] Véase *Resolución* emitida bajo la designación alfanumérica KLRA2022-00608.

*Revisión de Subasta.* En su escrito, señala la comisión de los siguientes errores:

> **PRIMERO**: ERRÓ LA JUNTA DE SUBASTAS AL ENMENDAR LAS ESPECIFICACIONES DEL EQUIPO LUEGO DE LA REUNIÓN PRE-SUBASTA COMPULSORIA Y TRANSCURRIDO EL TÉRMINO LÍMITE PARA QUE LOS LICITADORES SOMETIERAN PREGUNTAS, ADAPTÁNDOLAS PARA FAVORECER A OTRO LICITADOR, EN PERJUICIO DE R&B.
>
> **SEGUNDO**: ERRÓ LA JUNTA DE SUBASTAS AL NO ADJUDICARLE A R&B LA BUENA PRO DE LA SUBASTA 23J, SEGÚN RECOMENDÓ EL DTOP, CUANDO LA DIFERENCIA EN LA ESPECIFICACIÓN DEL EQUIPO ESTRIBA EN SOLO PUNTO CUATRO (.4) CABALLOS DE FUERZA LO QUE CONSTITUYE UNA "DESVIACIÓN PERMISIBLE" BAJO LA SECCIÓN 7.3.17 (11) DEL REGLAMENTO DE SUBASTAS QUE NO AFECTA EL PROPÓSITO Y OPERACIÓN DEL EQUIPO.

El 4 de junio de 2024, esta Curia emitió *Resolución* en la cual concedió a la parte recurrida veinte (20) días para presentar su posición. Posteriormente, el 25 de junio de 2024, la parte recurrida presentó una *Solicitud de Término Adicional.* El 28 de junio de 2024, la parte recurrida presentó el correspondiente *Alegato en Oposición.* Contando con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A. Revisión judicial de las determinaciones administrativas

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, según enmendada, (3 LPRA sec. 9601 *et seq.*) (LPAU), se creó a los fines de uniformar los procedimientos administrativos ante las agencias. Consecuentemente, desde la aprobación del procedimiento provisto por la LPAU, los entes administrativos están precisados a conducir sus procesos de reglamentación, adjudicación y concesión de licencias y permisos de conformidad con los preceptos de este estatuto y el debido proceso de ley. *López Rivera v. Adm. de Corrección,* 174 DPR 247, 254-255 (2008).

La Sección 4.1 de la LPAU, dispone que las decisiones administrativas finales pueden ser revisadas por el Tribunal de Apelaciones. (3 LPRA sec. 9671). La finalidad de esta disposición es delimitar la discreción de los organismos administrativos para asegurar que estos ejerzan sus funciones conforme a la ley y de forma razonable. *Simpson y otros v. Consejo de Titulares y otros*, 2024 TSPR 64, 213 ___ (2024). Véase, además, *Capó Cruz v. Jta. de Planificación et al.,* 204 DPR 581, 590-592 (2020); *Empresas Ferrer, v. ARPe,* 172 DPR 254, 264 (2007). Es decir, la revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. *Capote Rivera y otros v. Voilí Voilá Corp. y otros*, 2024 TSPR 29, 213 DPR ___ (2024). A su vez, posibilita el poder constatar que los organismos administrativos "cumplan con los mandatos constitucionales que rigen el ejercicio de su función, especialmente con los requisitos del debido proceso de ley". Íd. Así, la revisión judicial constituye el recurso exclusivo para revisar los méritos de una decisión administrativa sea esta de naturaleza adjudicativa o de naturaleza informal. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra*; *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527 (2006).

Es norma reiterada que las decisiones de los organismos administrativos están revestidas de una presunción de regularidad y corrección, *OCS v. CODEPOLA,* 202 DPR 842, 852-853 (2019). Esto debido a que, mediante esta norma se reconoce el peritaje del que gozan los organismos administrativos en aquellas materias que le han sido delegadas por ley. *OCS v. Universal,* 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 821 (2012).

Nuestro máximo Foro ha establecido que, al ejercer la revisión judicial los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Otero v. Toyota,* 163 DPR 716 (2005).

Cónsono con lo anterior, la sección 4.5 de la LPAU establece que los tribunales deben sostener las determinaciones de hechos de las agencias si están basadas en "evidencia sustancial que obra en el expediente administrativo". (3 LPRA sec. 9675). Como vemos, la norma anterior nunca ha pretendido ser absoluta. Por eso, el Tribunal Supremo ha resuelto con igual firmeza que los tribunales no pueden extender un sello de corrección, so pretexto de deferencia, a las determinaciones o interpretaciones administrativas irrazonables, ilegales, o simplemente, contrarias a derecho. *Super Asphalt v. AFI y otro* 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde,* 202 DPR 117, 127 (2019).

Sin embargo, la citada Sección 4.5 de la LPAU, *supra,* dispone que "[l]as conclusiones de derecho serán revisables en todos sus aspectos por el tribunal". Aun así, se sustituirá el criterio de la agencia cuando no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo. *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36-37 (2018). Por ende, "los tribunales deben darle peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra". *Torres Rivera v. Policía de PR,* 196 DPR 606, 627 (2016). Lo anterior responde a la vasta experiencia y conocimiento especializado que tienen las

agencias sobre los asuntos que le son encomendados. *González Segarra et al. v. CFSE,* 188 DPR 252, 276 (2013).

Al revisar las decisiones de las agencias, el criterio rector que debe guiar a los tribunales es la razonabilidad de la actuación, aunque ésta no tiene que ser la única o la más razonable. *Vargas Serrano v. Inst. Correccional,* 198 DPR 230, 237 (2017). Por lo tanto, al momento de examinar un dictamen administrativo se determina que: (1) la decisión administrativa no está basada en evidencia sustancial; (2) la agencia erró en la aplicación de la ley (3) el organismo administrativo actuó de manera irrazonable, arbitraria o ilegalmente; o (4) su actuación lesiona derechos constitucionales fundamentales, entonces la deferencia hacia los procedimientos administrativos cede. *Empresas Ferrer v. ARPe, supra,* pág. 264.

En esta tarea, los foros judiciales analizarán los aspectos siguientes: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial, y (3) si las conclusiones de derecho fueron correctas. *Asoc. Fcias v. Caribe Specially et al. II,* 179 DPR 923, 940 (2010). Mientras que, las determinaciones de hecho se deben sostener si las mismas se basan en evidencia sustancial que surja de la totalidad del expediente administrativo, *Rolón Martínez v. Supte. Policía,* 201 DPR 26, 36 (2018), las determinaciones de derecho pueden ser revisadas en su totalidad. *Torres Rivera v. Policía* de PR, *supra,* pág. 627.

Si bien es cierto que la revisión judicial no equivale a la sustitución automática del criterio e interpretación del organismo administrativo, *Rebollo v.* Y *Motors,* 161 DPR 69, 77 (2004), los tribunales revisores descartarán el criterio de los entes administrativos cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez*

*v. Supte. Policía, supra.* Si la interpretación y la aplicación del derecho no es correcta, el foro apelativo está obligado a intervenir. *JP, Plaza Santa Isabel v. Cordero Badillo,* 177 DPR 177, 187 (2009). "En esas circunstancias, [el foro apelativo] cederá la deferencia que merecen las agencias en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra". *Super Asphalt Pavement, Corp. v. AFI y otros,* 206 DPR 803, 819 (2021). Véase, además, *Capote Rivera y otros v. Voilí Voilá Corp. y otros, supra; Rolón Martínez v. Supte. Policía, supra.*

**B. El procedimiento de subasta**

En su obligación de proveer servicios a la ciudadanía, el Estado utiliza diversos medios de licitación pública o subastas, por el cual invitan a uno o varios proponentes a presentar ofertas para la realización de obras o para la adquisición de bienes y servicios. *Transporte Rodríguez Asfalto, Inc. v. Junta de Subastas,* Mun. Aguadilla 194 DPR 711, 716 (2016). Al respecto, nuestro máximo Foro ha reiterado que:

> [e]l propósito primordial del proceso de subasta es proteger los fondos públicos, fomentando la libre y diáfana competencia entre el mayor número de licitadores posibles. Así, se pretenden evitar influencias ajenas al beneficio para el interés público. Por medio de las subastas gubernamentales el Gobierno maximiza la posibilidad de obtener el mejor contrato, mientras se protegen los intereses y activos del pueblo contra el dispendio, el favoritismo, la corrupción y el descuido al otorgarse los contratos. De esta forma, el Gobierno puede llevar a cabo sus funciones como comprador de una forma eficiente, honesta y correcta para proteger los intereses y el dinero del pueblo.

Así, cualquier controversia que se derive de los procedimientos de subasta deben decidirse a la luz del interés público. *Municipio de Aguada v. W Contruction, LLC y otros,* 2024 TSPR 69, 213 DPR ___ (2024). Cónsono con lo anterior, el 23 de julio de 2019, la Asamblea Legislativa aprobó la Ley Núm. 73-2019 (3 LPRA sec. 9831 *et seq.*), conocida como la Ley de la Administración de Servicios Generales para la Centralización de las Compras del

Gobierno de Puerto Rico de 2019. En su Exposición de Motivos, se establece como política pública del Gobierno de Puerto Rico, la centralización de los procesos de compras gubernamentales de bienes, obras y servicios, en aras de lograr mayores ahorros fiscales y la transparencia en la gestión gubernamental. Consecuentemente, se le delega a la Administración de Servicios Generales (ASG) la responsabilidad de implantar dicha política pública y de coordinar y dirigir el proceso de adquisición de bienes y servicios y la contratación de servicios del Gobierno de Puerto Rico. *PVH Motor v. ASG*, 209 DPR 122 (2022).

Como parte de sus disposiciones, la Ley Núm. 73-2019 creó la Junta de Subastas, adscrita a la ASG. Artículo 47 de la Ley Núm. 73-2019 (3 LPRA sec. 9836). La Junta de Subastas tiene naturaleza *cuasijudicial* y está facultada para evaluar y adjudicar, mediante un procedimiento uniforme, las subastas del Gobierno de Puerto Rico que se realicen en cumplimiento con las disposiciones de la ley. Así pues, la ASG está facultada para constituir un Comité Evaluador de Subastas, cuya función principal será evaluar el cumplimiento, por parte de los licitadores, de los requisitos de licitación establecidos para cada subasta en particular. Íd.

Indiscutiblemente, aunque el gobierno debe procurar que las obras públicas se realicen al precio más bajo posible, existen otros criterios, además del precio, que tienen que ser evaluados por la Junta de Subastas al momento de adjudicarla. *Maranello, Inc. v. OAT*, 186 DPR 780 (2012); *C. Const. Corp. v. Mun. de Bayamón*, 115 DPR 559 (1984). Algunos de estos factores incluyen que las propuestas sean conforme a las especificaciones de la agencia, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador y su reputación e integridad comercial entre otros factores. *Maranello, Inc. v. OAT, supra*.

Además, según ha resuelto nuestro máximo Foro las consideraciones de orden público como los servicios o productos técnicos, la probabilidad de realizar la obra de manera más eficiente y dentro del tiempo acordado, y los materiales que ofrezca un postor de la propuesta que no es la más económica, pueden llevar a la agencia a seleccionarlo, si ello corresponde a sus mejores intereses. *Maranello, Inc. v. OAT, supra*; *Empresas Toledo v. Junta de Subastas,* 168 DPR 771 (2006).

De otro lado, el Tribunal Supremo ha resuelto que en el contexto de las subastas gubernamentales la norma general es que la Junta de Subastas de la agencia goza de amplia discreción en la evaluación de las propuestas sometidas ante su consideración. *Maranello, Inc. v. OAT, supra*; *Accumail P.R. v. Junta Sub. A.A.A.,* 170 DPR 821 (2007). Como regla general, la agencia u organismo público es quien posee una vasta experiencia y especialización que la colocan en mejor posición que el foro judicial para seleccionar el postor que más convenga al interés público. *Maranello, Inc. v. OAT, supra*; *Empresas Toledo v. Junta de Subastas, supra.*

Así, una vez se adjudique la buena pro, los tribunales no deben sustituir el criterio de la agencia o junta concernida, a menos que se demuestre que la decisión se tomó de forma arbitraria o caprichosa o que medió fraude o mala fe. *Maranello, Inc. v. OAT, supra.* En ausencia de estos elementos ningún postor tiene derecho a quejarse cuando otra proposición es elegida como la más ventajosa. Íd. La cuestión debe decidirse a la luz del interés público. Íd. En estos casos, la determinación de la agencia será sostenida si cumple con el criterio de razonabilidad. Íd.

### i.   **Notificación**

El Artículo 53 de la Ley Núm. 73-2019 (3 LPRA sec. 9836f) establece que,

> [u]na vez adjudicado un asunto ante la consideración de la Junta de Subastas, esta procederá a notificar su determinación final, según los procedimientos y mecanismos que se establezcan en el Reglamento Uniforme de Compras y Subastas. La notificación de adjudicación de subasta será notificada adecuadamente, mediante correo federal certificado con acuse de recibo o correo electrónico, a todas las partes que tengan derecho a impugnar tal determinación. La notificación se realizará de manera simultánea y utilizando el mismo método de notificación para todas las partes. La notificación de adjudicación estará debidamente fundamentada y deberá incluir los fundamentos que justifican la determinación, aunque sea de forma breve o sucinta, en aras de que los foros revisores puedan revisar tales fundamentos y así determinar si la decisión fue arbitraria, caprichosa o irrazonable. Como mínimo, la notificación debe incluir: (1) los nombres de los licitadores que participaron en la subasta y una síntesis de sus propuestas; (2) los factores o criterios que se tomaron en cuenta para adjudicar la subasta; (3) los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos; y (4) la disponibilidad y el plazo para solicitar revisión administrativa ante la Junta Revisora de Subastas de la Administración de Servicios Generales y revisión judicial.
> La determinación final de la Junta de Subastas contendrá determinaciones de hechos y conclusiones de derecho. La parte adversamente afectada por una actuación, determinación final o resolución de la Junta de Subastas podrá presentar un recurso de revisión, conforme a lo establecido en el Capítulo VIII de esta Ley.

Cónsono con esto, nuestro Tribunal Supremo ha expresado que la notificación de la adjudicación de una subasta debe ser fundamentada, al menos de forma sumaria y sucinta. *L.P.C. & D., Inc. v. Autoridad de Carreteras*, 149 DPR 869 (1999). Es decir, al menos debe incluir la siguiente información: los nombres de los licitadores en la subasta y una síntesis de sus propuestas; los factores o criterios que se tomaron en cuenta para adjudicar la subasta; los defectos, si alguno, que tuvieran las propuestas de los licitadores perdidosos y la disponibilidad y el plazo para solicitar la reconsideración y la revisión judicial. Íd.

### ii. Reglamento Núm. 9230 del 18 de noviembre de 2019

La ASG, en virtud de las facultades que le fueron concedidas en la Ley Núm. 73-2019, adoptó el Reglamento Uniforme de Compras y de Subastas de Bienes, Obras y Servicios No Profesionales de la Administración de Servicios Generales del Gobierno de Puerto Rico, Reglamento Núm. 9230 de 18 de

noviembre de 2019. En este, se establecen todas las normas y los procedimientos a seguir por la ASG en la tramitación de todas sus compras y subastas.

Con relación a la controversia que nos atañe, la Sección 7.3.5 del Reglamento Núm. 9230 regula las enmiendas al pliego de subastas. Específicamente, dicha sección establece que solo se podrán efectuar enmiendas al pliego de subasta:

1. Cuando la agencia peticionaria someta enmiendas;
2. Cuando a juicio del Administrador los términos allí dispuestos sean irrazonables;
3. Cuando se descubra algún error sustancial e insubsanable en el pliego de subasta;
4. Cuando se interese aumentar o disminuir términos o cantidades o variar condiciones o especificaciones;
5. Cuando se reconsideren los términos del pliego.

De otro lado, el Reglamento 9230 define *Criterios de Evaluación* como aquellos

[c]riterios enumerados en el pliego de subasta o solicitud de propuestas los cuales son utilizados por la Administración Auxiliar de Adquisiciones o Juntas de Subastas para evaluar, clasificar y recomendar ofertas o propuestas para su adjudicación. También incluye los criterios enumerados en una solicitud de cualificaciones a ser evaluados por el Comité Evaluador de Subastas o Propuestas para recomendar la cualificación de un proponente potencial.

Cónsono con lo anterior, la Sección 7.3.17 (2) del Reglamento 9230 establece los criterios básicos de evaluación utilizados por la Junta de Subastas para evaluar las ofertas:

a. La exactitud con la cual el licitador ha cumplido con las especificaciones, los términos y las condiciones del pliego de la subasta formal.
b. La calidad de lo bienes, obras y servicios no profesionales ofrecidos y como estos cumplen con las especificaciones y satisfacen las necesidades establecidas. En las situaciones en que se efectuaron pruebas con muestras suministradas por el licitador, se incluirá la evaluación de la muestra del bien entre los aspectos de este criterio de calidad.
c. Si el precio es competitivo y comparable con el prevaleciente en el mercado. Además, aplicar el porciento de preferencia establecido si la persona o la entidad ha presentado una Resolución de la Junta para la Inversión en la Industria Puertorriqueña o cualquier documento acreditativo de preferencia, según dispuesto en leyes preferenciales.
d. La habilidad reconocida del licitador para llevar a cabo trabajos de la naturaleza bajo la consideración en obras y servicios no profesionales.

e. La responsabilidad económica del licitador y las experiencias de la Administración con el cumplimiento de contratos anteriores de naturaleza igual o parecida.

f. El término de entrega más próximo, si este se ha hecho constar como una de las condiciones.

g. La capacidad económica y financiera, así como la trayectoria y experiencia previa del licitador para proveer esto servicios o bienes y cumplir con los términos de entrega y garantías del producto o servicio.

h. El período específico o los términos aplicables a cada garantía, sus limitaciones y condiciones, los pasos requeridos para reclamar la garantía, que entidad proveerá el servicio de reemplazo, subsanación, corrección o reparación del bien o el servicio.

i. Si el licitador cualifica como empresa minoritaria o de mujeres, u otra para la cual se deba conceder una preferencia bajo cualquier ley aplicable.

j. Cualquier otro criterio pertinente que represente el mejor valor para el Gobierno de Puerto Rico.

Todos estos criterios se tabularán y presentarán en forma comparativa entre licitadores y este informe formará parte del expediente de la subasta.

Además, el Reglamento 9230 define el término *Especificaciones* como un conjunto de características primordiales de bienes, obras o servicios no profesionales, utilizados como referencia para cada renglón de cotización, subasta o propuesta: características físicas, funcionales, de estética o de calidad requerida, con las que se describen los bienes, obras y servicios no profesionales. Artículo 1.6 (28) del Reglamento 9230, *supra.* Asimismo, la Sección 7.3.17 (10) regula lo concerniente al *Rechazo Global.* A esos efectos, la Junta de Subastas:

Podrá rechazar cualquiera o todas las ofertas para una subasta formal en las situaciones siguientes:

a. Los licitadores no cumplan con alguno de los requisitos, especificaciones o condiciones estipuladas.

b. Los precios obtenidos sean irrazonables o los términos resulten onerosos.

c. Cuando las ofertas demuestren que los licitadores controlan el mercado del producto solicitado y se entienda que se han puesto de acuerdo entre sí para cotizar precios excesivos. En tal caso, se realizará el referido correspondiente al Departamento de Justicia.

De ocurrir alguna de las circunstancias antes mencionada, la Junta de Subastas deberá emitir una segunda convocatoria del proceso. Solo en caso de que las ofertas recibidas en dicha convocatoria resulten nuevamente en las circunstancias arriba mencionada, procederá el trámite de compra excepcional. La Junta de Subastas deberá levantar un acta de cada proceso en el cual exponga detalladamente la situación particular acaecida como resultado de cada convocatoria. Ambas actas deberán obrar en el expediente, como requisito previo al trámite de compra excepcional.

Por su parte, la *Desviación Permisible* establecida en la Sección 7.3.17 (11) establece que,

> La Junta de Subastas podrá aceptar desviaciones mínimas en las especificaciones, términos y condiciones de las ofertas recibidas, siempre y cuando concurran los siguientes requisitos:
> a. Ningún licitador ofrezca el bien o servicio no profesional con las especificaciones requeridas;
> b. no se afecte el propósito original a que está destinada la subasta y;
> c. el precio cotizado sea competitivo y comparable con el prevaleciente en el mercado.
> La Junta de Subastas se reserva el derecho de obviar cualquier informalidad o diferencia de menor importancia en los términos y condiciones, si cumple con el propósito para el que se solicitan y resulta beneficioso para el Gobierno de Puerto Rico. Las desviaciones no podrán afectar sustancialmente la calidad, capacidad o características esenciales de los artículos o servicios solicitados. Deberá incluirse en el expediente de la subasta un memorando explicativo de la desviación permitida.

Asimismo, la *Impugnación del Pliego* está definido en el Artículo 1.6 (34) del Reglamento 9230 como la "[s]olicitud que hace un licitador o un proponente ante la Administración Auxiliar de Adquisiciones para que revise las especificaciones y condiciones contenidas en los pliegos de una subasta o propuesta convocada". Así, la Sección 7.3.6 del Reglamento 9230 establece lo relativo a la impugnación del pliego de la subasta. A esos efectos, la mencionada sección dispone, entre otras cosas, que,

> [s]i un licitador interesado en participar en una subasta formal no estuviera de acuerdo con los términos finales, instrucciones, especificaciones o condiciones establecidas en el pliego de la subasta, podrá radicar personalmente ante la Administración Auxiliar de Adquisiciones el correspondiente escrito de impugnación, dentro de los tres (3) días laborables siguientes a la fecha en que la Administración hace disponible los pliegos de la subasta. Toda impugnación del pliego de la subasta radicada fuera del término aquí establecido será rechazada de plano. Deberá notificarse copia del recurso presentado a los licitadores invitados a la subasta formal.

De otro lado, la Sección 7.2.8 del mencionado cuerpo reglamentario establece lo concerniente a las reuniones pre-subasta. Específicamente, dicha sección dispone que la Administración Auxiliar de Adquisiciones podrá celebrar reuniones pre-subasta no menos de cinco (5) días laborables antes de la fecha

fijada para el acto de apertura. Así pues, toda pre-subasta tendrá el propósito de aclarar a los licitadores las dudas que surjan en torno al pliego de subasta. Íd. Además, se establecerá un período y fecha límite para suministrar preguntas escritas. Íd. Toda pregunta o solicitud de documentos presentada por los potenciales licitadores a la Administración Auxiliar de Adquisiciones será canalizada por medio de la Secretaría de la Administración Auxiliar de Adquisiciones. Íd. Además, toda pregunta escrita y sometida a la consideración de la Administración Auxiliar de Adquisiciones será contestada en el término establecido para ello. Íd. Tanto la pregunta como la contestación se ofrecerá a los demás licitadores para su beneficio y para añadir transparencia al proceso. Íd.

**III.**

En su primer señalamiento de error, la parte recurrente alegó que erró la Junta de Subastas al enmendar las especificaciones del equipo luego de la reunión pre-subasta compulsoria y transcurrido el término límite para que los licitadores sometieran preguntas, adaptándolas para favorecer a otro licitar en perjuicio suyo.

Según la Sección 7.2.8 del Reglamento 9230, *supra,* la Administración Auxiliar de Adquisiciones podrá celebrar reuniones pre-subasta no menos de cinco (5) días laborables antes de la fecha fijada para el acto de apertura. Es decir, la Junta de Subastas tiene discreción para llevar a cabo una reunión pre-subasta. Según surge del expediente ante *nos,* la Junta de Subastas celebró una (1) reunión pre-subasta, sin embargo, no estaba obligada a celebrar una segunda reunión pre-subasta. Por consiguiente, no encontramos indicio de que la Junta de Subasta haya actuado de forma irrazonable. Es decir, la determinación de la Junta de Subasta de celebrar una sola reunión pre-subasta representó un ejercicio razonable de su discreción administrativa.

Por otra parte, debemos auscultar si incidió la Junta de Subasta al enmendar las especificaciones del equipo luego de la reunión pre-subasta. Según surge del derecho que antecede, la Sección 7.3.5 del Reglamento 9230, *supra*, dispone, entre otras cosas, que solo se podrán efectuar enmiendas al pliego de la subasta "[c]uando se interese aumentar o disminuir términos o cantidades, o variar condiciones o especificaciones". Así, nada requiere la citada disposición reglamentaria a los efectos de que la Junta de Subastas debe justificar la enmienda al pliego de subastas.

Con relación a la alegación del recurrente de que la Junta de Subastas enmendó las especificaciones del equipo, luego de la reunión pre-subasta y transcurrido el término límite para que los licitadores sometieran preguntas, surge del expediente que la Junta de Subastas notificó el cambio en las especificaciones el 5 de agosto de 2022 y el acto de apertura fue el 15 de agosto de 2022. Por lo tanto, la Junta de Subastas emitió la enmienda al pliego de subastas nueve (9) días antes del acto de apertura. Así, la enmienda a las especificaciones del equipo se hizo ocho (8) días antes de que expirara el término concedido en la Sección 7.3.5 del Reglamento Núm. 9230, *supra*. En consecuencia, el primer error señalado no se cometió.

En su segundo señalamiento de error, la parte recurrente adujo que erró la Junta de Subastas al no adjudicarle la *buena pro* de la Subasta 23J, según recomendó el DTOP, cuando la diferencia en la especificación del equipo estriba en solo punto cuatro (.4) caballos de fuerza lo que constituye una "desviación permisible" bajo la Sección 7.3.17 (11) del Reglamento de Subastas que no afecta el propósito y operación del equipo. No le asiste la razón.

En primer lugar, de la Notificación Núm. 1 emitida por la ASG el 5 de agosto de 2022, surge que la subasta es para la adquisición

de excavadoras compactas para el DTOP, entidades gubernamentales, exentas y Municipios del Gobierno de Puerto Rico. Así pues, es menester dejar claro que la aludida excavadora no era para uso exclusivo del DTOP, sino que también sería utilizada por otras entidades gubernamentales.

En segundo lugar, con relación a la *Desviación Permisible*, la Sección 7.3.17 (11) del Reglamento 9230, *supra*, establece que la Junta de Subastas podrá aceptar desviaciones mínimas en las especificaciones, términos y condiciones de las ofertas recibidas, siempre y cuando concurran ciertos requisitos. Es decir, las desviaciones permisibles también pueden ser realizadas por la Junta de Subastas de forma discrecional. En el caso de autos, la Junta de Subastas decidió, a su discreción y luego de evaluadas las ofertas, no realizar una desviación permisible. En consecuencia, emitió un *Rechazo Global* ante el incumplimiento de los licitadores con las especificaciones establecidas en la UEA-23-018. Con esta actuación, la parte recurrida actuó dentro de la discreción establecida en la Sección 7.3.17 (10) del Reglamento 9230, *supra*.

En fin, no hay indicios en el expediente ante nuestra consideración que demuestren que la actuación de la Junta de Subastas constituye un abuso de discreción o constituye una actuación irrazonable, ilegal o contraria a derecho. Así, entendemos que la actuación de la Junta de Subastas estuvo dentro de los márgenes de las facultades que le fueron delegadas por ley.

**IV.**

Por los fundamentos que anteceden, *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la secretaria del

Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones