Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| ALEXANDER GONZÁLEZ RAMOS<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | TA2026RA00200 | *Revisión* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: ICSH-64-25<br><br>Sobre: Centro Rehabilitación Nuevas Oportunidades |

Panel integrado por su presidenta, la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de abril de 2026.

Comparece Alexander González Ramos (en adelante recurrente) mediante un recurso de revisión judicial, para solicitarnos la revisión de la *Respuesta del área concernida* emitida y notificada el 15 de enero de 2026, por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (en adelante, DCR).[1][1] Sobre dicha *Respuesta,* se presentó una oportuna solicitud de reconsideración, la cual fue acogida.[2] Así, pues, mediante *Resolución* del 6 de abril de 2026, se amplió la respuesta previamente emitida, y se orientó al recurrente de que, luego de corroborar su caso con el personal del Centro Rehabilitación Nuevas Oportunidades (CRNO), el mismo se encontraba pendiente de ser evaluado.[3]

Por los fundamentos que expondremos, se *confirma* la *Respuesta* recurrida.

---

[1] Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC TA), a la Entrada Núm. 1, Apéndice 3, pág. 4.
[2] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, pág. 7.
[3] *Íd.,* a la Entrada Núm. 1, Apéndice 2.

I

Conviene mencionar que el aquí recurrente es miembro de la población correccional. Dicho lo anterior, comenzamos por puntualizar que la controversia de marras inició cuando, el 3 de octubre de 2025, el recurrente suscribió una *Solicitud de remedio administrativo*.[4] En esta, acotó que hacía unos meses que su social penal lo refirió al programa CRNO, sin embargo, el proceso había sido muy dilatado.

Evaluada la solicitud, el 15 de enero de 2026, el DCR emitió la *Respuesta* que nos ocupa.[5] Mediante la aludida respuesta, el DCR dispuso lo siguientes:

> Habiendo sido referido por 2da ocasión a CRNO, no se ha recibido contestación en relación al referido; se exhorta solicita [*sic*] apelación para que se emita la misma.[6]

Inconforme, el 23 de enero de 202[6], el recurrente interpuso una *Solicitud de reconsideración*.[7] Específicamente, peticionó que, dado a que el programa no había dado respuesta al atraso de su proceso, se le ayudara a comunicarse con el supervisor de CRNO y a corroborar con su social penal Zoraida Guzmán.

En respuesta, el 19 de febrero de 2026, se acogió la solicitud de reconsideración presentada por el recurrente.

Finalmente, el 6 de abril de 2026, mediante *Resolución* el DCR dispuso lo siguiente:

> Se orienta al recurrente que luego de corroborar el caso con el personal del Centro Rehabilitación Nuevas Oportunidades [se] encuentra pendiente a ser evaluado. Es importante que le solicite al técnico Sociopenal asignado para que se comunique con el personal de programa para que pueda darle el seguimiento apropiado.[8]

Inconforme, el 20 de abril de 2026, presentó un recurso de revisión en el cual mostró su inconformidad con la respuesta del DCR.

---

[4] SUMAC TA, a la Entrada Núm. 1, Apéndice 3, pág. 1.
[5] *Íd.*, a la Entrada Núm. 1, Apéndice 3, pág. 4.
[6] *Íd.*
[7] *Íd.*, a la Entrada Núm. 1, Apéndice 3, pág. 5.
[8] *Íd.*, a la Entrada Núm. 1, Apéndice 2.

Conforme a la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, este Tribunal tiene la facultad de prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de lograr su más justo y eficiente despacho.[9] En consideración a lo anterior, luego de haber examinado la totalidad de los autos ante nos, hemos colegido eximir a la parte recurrida de presentar escrito en oposición al recurso de revisión judicial ante nos.

II

## A. La Revisión Judicial

El Tribunal Supremo de Puerto Rico ha sostenido que el derecho a cuestionar la determinación de una agencia, mediante revisión judicial, es parte del debido proceso de ley protegido por la Constitución de Puerto Rico.[10]  Particularmente, el Artículo 4.006 (c) de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico otorga competencia apelativa al Tribunal de Apelaciones para revisar las decisiones, órdenes y resoluciones finales de las agencias administrativas.[11]  La revisión judicial de las decisiones administrativas tiene como fin delimitar la discreción de los organismos administrativos, para asegurar que ejerzan sus funciones conforme a la ley y de forma razonable.[12] A tenor, corresponde a los tribunales examinar si las decisiones de las agencias administrativas fueron tomadas dentro de los poderes delegados y si son compatibles con la política pública que las origina.[13] A esos efectos, la revisión judicial comprende tres (3) aspectos: (i) la concesión del remedio apropiado; (ii) la revisión de

---

[9] *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág.15, 215 DPR __ (2025).
[10] *Asoc. Condómines v. Meadows Dev.*, 190 DPR 843, 847 (2014); *Picorelli López v. Depto. de Hacienda*, 179 DPR 720, 736 (2010).
[11] Ley Núm. 201-2003, 4 LPRA sec. 24y(c); *Asoc. Condómines v. Meadows Dev.*, supra, a la pág. 847.
[12] *Vázquez et al. v. DACo*, 2025 TSPR 56, 215 DPR ___ (2025); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007).
[13] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018).

las determinaciones de hecho conforme al criterio de evidencia sustancial, y (iii) la revisión completa y absoluta de las conclusiones de derecho.[14]

Dentro de este marco, los tribunales apelativos, al ejercer su función revisora, deben conceder deferencia a las decisiones emitidas por las agencias, debido a la vasta experiencia y conocimiento especializado en los asuntos que les han sido encomendados.[15] Igualmente, el Alto Foro ha enfatizado que los tribunales, aplicando el criterio de razonabilidad y deferencia, no deben alterar las determinaciones de las agencias.[16] En mérito de lo anterior, los tribunales deben ser cautelosos al intervenir con las conclusiones e interpretaciones de los organismos administrativos especializados.[17]

Ahora bien, la deferencia reconocida a las decisiones de las agencias administrativas cede en algunas situaciones: (i) cuando la decisión no esté basada en evidencia sustancial; (ii) cuando la agencia haya errado en la aplicación de la ley; (iii) cuando su actuación resulte ser arbitraria, irrazonable o ilegal; y, (iv) cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[18] Entiéndase que, aunque los tribunales están llamados a conceder deferencia a las decisiones administrativas, tal norma no es absoluta. Ello, puesto a que no puede imprimírsele un sello de corrección automático, bajo el pretexto de deferencia, a determinaciones o interpretaciones administrativas que son irrazonables, ilegales o contrarias a derecho.[19]

---

[14] *Vázquez et al. v. DACo,* supra; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012), citando a *Asoc. Fcias v. Caribe Specialty et al. II,* 179 DPR 923, 940 (2010); *Mun. de. San Juan v. JCA*, 149 DPR 263, 279-280 (1999).
[15] *Rolón Martínez v. Supte. Policía*, supra, a la pág. 35.
[16] *Íd.*
[17] *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 892 (2008).
[18] *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800, 822 (2012).
[19] *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 213 DPR 743 (2024).

Debido a la presunción de regularidad y corrección de los procedimientos y las decisiones de las agencias administrativas, quien alegue ausencia de evidencia sustancial tendrá que presentar prueba suficiente para derrotar esta presunción, no pudiendo descansar en meras alegaciones.[20] Para ello, deberá demostrar que existe otra prueba en el expediente que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración.[21] Si la parte afectada no demuestra la existencia de otra prueba que sostenga que la actuación de la agencia no está basada en evidencia sustancial o que reduzca o menoscabe el valor de la evidencia impugnada, el Tribunal respetará las no sustituirá el criterio de la agencia por el suyo.[22]

### B. Las Solicitudes de Remedios Administrativos Radicadas por la Población Correccional

La División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (División) se estableció con el propósito principal de proveerles a los miembros de la población correccional un organismo administrativo al cual puedan recurrir, en primera instancia, mediante una solicitud de remedio. Ello, con el fin de minimizar las diferencias entre los miembros de la población correccional y el personal y para evitar o reducir la presentación de pleitos en los Tribunales de Justicia.[23] A tenor, la División se encarga, esencialmente, de atender quejas y agravios de los confinados, en contra del DCR o sus funcionarios, sobre asuntos tales como: (i) agresiones físicas, verbales y sexuales; (ii) propiedad

---

[20] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); *González Segarra et al. v. CFSE*, 188 DPR 252, 277 (2013); *Pacheco v. Estancias*, 160 DPR 409, 431 (2003).
[21] *Gutiérrez Vázquez v. Hernández y otros*, 172 DPR 232, 244 (2007).
[22] *Otero v. Toyota*, 163 DPR 716, 728 (2005).
[23] Introducción del Reglamento para Atender Solicitudes de Remedios Administrativos Radicados por los Miembros de la Población Correccional, Reglamento Núm. 8583 del 4 de mayo de 2015.

de confinados; (iii) plan de recreación; (iv) ejercicios; (v) uso de biblioteca para fines recreativos, entre otros.[24]

Ahora bien, la División, asumirá jurisdicción sobre aquellas solicitudes de remedio presentadas por un miembro de la población correccional con el fin de que se atienda un asunto relacionado a su confinamiento, que lo afecte personalmente en su bienestar físico o mental, calidad de vida, seguridad o plan institucional.[25] A esos efectos, se entenderá que una solicitud es fútil o insustancial cuando se radique sin méritos y no propicie la concesión de un remedio al amparo del Reglamento Núm. 8583.[26] Particularmente, la Regla XIII del referido reglamento, dispone que el evaluador de la solicitud tendrá la facultad para desestimarla cuando el miembro de la población correccional emita opiniones que no estén dirigidas a remediar una situación relacionada con su confinamiento.[27] Habida cuenta de ello, los miembros de la población correccional serán responsables de presentar las solicitudes de remedio en forma clara, concisa y honesta.[28]

III

A través del presente recurso, el recurrente muestra su inconformidad con la respuesta recibida por la División de Remedios administrativos del DCR. En síntesis, la situación confrontada por el recurrente es que hacía unos meses fue referido CRNO, sin embargo, el proceso ha sido muy dilatado. A tenor peticionó, entre otras cosas, se le ayudara comunicarse con el supervisor de CRNO. Surge de la *Resolución* en atención a solicitud de reconsideración presentada por el recurrente que se corroboró el caso con el personal de CRNO y el mismo es encuentra pendiente a ser evaluado.

---

[24] Introducción del Reglamento Núm. 8583, *supra.*
[25] Reglas IV (24) y VI (1)(a) del Reglamento Núm. 8583, *supra*; *Vargas Serrano v. Inst. Correccional,* 198 DPR 230, 243 (2017).
[26] Regla IV (25) del Reglamento Núm. 8583, *supra.*
[27] *Íd.,* Regla XIII (5)(g).
[28] *Íd.,* Regla VII.

Es norma harta conocida que, si del análisis realizado se desprende que la interpretación que hace una agencia resulta razonable, nos corresponde abstenernos de intervenir.[29] Ahora bien, se justifica nuestra intervención cuando: (i) la decisión no esté basada en evidencia sustancial; (ii) la agencia haya errado en la aplicación de la ley; (iii) su actuación resulte ser arbitraria, irrazonable o ilegal, y cuando (iv) la actuación administrativa lesiona derechos constitucionales fundamentales.[30]

Luego de evaluar los autos ante nuestra consideración colegimos que la determinación del DCR es una razonable y no cumple con ninguna de las excepciones que nuestro ordenamiento provee. Por consiguiente, no amerita la intervención de este foro revisor. A tenor, procede confirmar el dictamen recurrido.

IV

Por los fundamentos que anteceden, se *confirma* la *Respuesta* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

[29] *Gutiérrez Vázquez v. Hernández y otros*, supra, a la pág. 244.
[30] *The Sembler Co. v. Mun. de Carolina,* supra, a la pág. 822.